Booth, Judge,
delivered the opinion of the court:
The plaintiff, a Delaware corporation, is a coal-selling agency, representing an Illinois coal corporation, which owns and produces coal from its coal mines in Illinois.
On May 31,1922, the quartermaster supply officer, U. S. A., Chicago, Illinois, issued a printed circular soliciting pro- .. posáis “ for furnishing fuel for use of Army stations during the fiscal year beginning July 1, 1921, and ending June 30, 1922.” On June 9, 1922, plaintiff submitted a written proposal to furnish from its Empire mine at Virden, Illinois, for the Army post at Fort Leavenworth, Kansas, 1,500 tons of mine-run bituminous coal at $2.60 per ton f. o. b. cars at the mine. Subsequently, at the request of the supply bfficer, plaintiff’s bid was changed and the quantity of coal to be furnished increased to 3,500 tons, and the grade modified. The price remained the same. At the time of the receipt of the supply officer’s written circular of May 31, 1922, the plaintiff honestly believed that it was signing a proposal to furnish coal for the ensuing fiscal year, viz, from July 1,1922,. to June 30,1923, and did not know, and did not intend to make an offer to supply the quantity desired, at the places designated, within a month, i. e., by June 30, 1928. As a matter of proven fact, it was at the time physically impossible for the plaintiff to mine coal in Illinois, and the defendant was well aware of this situation, as the very dates mentioned in the printed circular indicate the emergency character of the solicitations. Illinois coal mines, and all union coal mines within the district where they were located, were closed and had been since April, 1922, because of a strike, almost nationwide, of coal miners. The Army was fearful for its fuel supply, due to the fact that its fuel contractors for the fiscal year 1921-1922 were relieved from supplying coal by the express terms of their contracts when such failure was due to strikes and walkouts. The general coal supply situation was so acute that the Government had to intervene and take over the situation by fixing prices and providing for the appointment of a fuel administrator.
The plaintiff had not prior to April, 1922, sought Government contracts. Subsequent to this date, however, and co *531 existent with the transaction here involved, plaintiff had submitted bids to the Treasury Department for supplying coal for the fiscal year 1922-1923, and without reading or careful examination of the defendant’s printed circular of May 31, 1922, responded to the same under the mistaken belief that it called for bids for supplying coal for the fiscal year 1922-1923, in accord with its proposals previously submitted to the Treasury Department.
The plaintiff did not discover its mistake until a short time prior to the award to it of the alleged contract to supply the coal. As soon as it did discover the mistake, and before the award was made, the plaintiff notified the supply officer’s office that it had inadvertently forwarded the proposal ; that it could not and did not intend to obligate itself to supply the coal from its Illinois mine for the period of time mentioned because of the strike, but would agree to supply the coal as soon as possible after the settlement of the strike, and that its bid was to be regarded in that light, plaintiff at the same time tendering its good offices as an agent in procuring for the Government such an emergency supply of coal as it could procure from the nonunion mines of Kentucky.
The supply officer of the defendant, on June 14, 1922, transmitted by mail the written proposal of the plaintiff to the Quartermaster General of the Army at Washington, requesting immediate attention to the same, and recommending an immediate award of the contract to the plaintiff. The Quartermaster General responded to the letter on June 17, 1922, and in so doing directed the attention of the'supply officer to the coal situation in the following language:
“ This office has information that all mines in Illinois are closed due to the strike, and it is assumed by this office that you know this company has this coal and can furnish it prior to June 30,1922; otherwise you will not award same to them. In view of the fact that you held these papers in your office four days after the opening of proposals, it is assumed that you have investigated this matter in the meantime.”
If the supply officer had given heed to the express terms of this authorization for an award, the written award mailed *532 to the plaintiff thereafter never would have been forwarded. Instead, however, the award did go forward in direct opposition to directions.
On June 26, 1922, less than a week after the plaintiff received notice of the award under his bid of June 9, 1922, the supply officer, in need of immediate fuel at Fort Leavenworth and fully conscious of the plaintiff’s inability to supply the same from its Illinois mine, accepted an offer of the plaintiff to seek to obtain informal bids for this urgent emergency from the nonunion coal fields of Kentucky, the plaintiff stating at the time that it was to be understood that in the event of success in the effort, deliveries made under this informal order were not to be regarded as deliveries under the proposal of June 9, 1922. The plaintiff did succeed in obtaining coal from the source anticipated, and did under Formal Purchase Order C-3354 — GS and Government bills of lading deliver the coal required for Fort Leavenworth. Some of this coal was delivered under extensions of time for' deliveries from plaintiff’s Illinois mines after the termination of the strike. Under the above contract plaintiff was to receive for the Kentucky coal $4.35 per ton.
An additional informal order for coal to be delivered from nonunion mines in Kentucky, dated June 21, 1922, to Fort Thomas, Kentucky, and Little Rock Intermediate Air Depot, Little Rock, Arkansas, was duly executed by the plaintiff to the satisfaction of the defendant. Thereafter the defendant, at the suggestion of the supply officer in Chicago, deducted from sums admittedly due the plaintiff under these two informal orders, the sum of $11,689.00, the difference between the quoted price in plaintiff’s bid of June 9, 1922, and the fixed price in the informal orders. It is for the recovery of this sum that this suit is brought.
The defendant relies upon a contention that the proposal of June 9, 1922, and the award of June 30, 1922, made on the final day for deliveries under the proposal, constitute a contract, and that plaintiff’s failure to read the written circular of May 31, 1922, in nowise releases it from the obligations of the contract. We manifestly accede to the last proposition with certain well-established reservations; but its applicability here is in our opinion not susta,inable. If one *533 enters into a contract, the terms and conditions of which are written out and .offered to him for acceptance, and without reading the same signs and incurs an obligation which ,if he had read the proposals he would not have incurred, it is axiomatic that the contract is binding. This case presents no such dilemma. Here, as the facts disclose, the plaintiff discovered its mistake before the award or acceptance had taken place, and notified the other party of its existence and unwillingness to be bound by the proposal. What the plaintiff did was in effect to withdraw its bid prior to acceptance, a wholly different situation from what it might have been had the award been made by both parties and they had re-manned in mutual ignorance of the existence of the mistake. The Chicago supply officer was without authority to make the award until approved by the Quartermaster General in Washington; and the supply officer transmitted a proposal which he knew had not been assented to, and one which he knew in advance could not under any human possibility be complied with. This fact he did not communicate to the Washington office as he should have done. The plaintiff was dealing directly with him, not the Washington office. Not only this, the Quartermaster General’s Office in Washington expressly conditioned the award on the actual knowledge of the supply officer that the coal could be supplied in view of the existing strike, and directed the supply officer to withhold the award ,if the contract could not be complied with. This the supply officer did not do. No reason of record is assigned for this singular course of dealing, and we are unable to ascribe one unless it be that the supply officer was determined to complicate an already distressing condition by attempting to hold the plaintiff responsible upon the written papers in his office, irrespective of the plaintiff’s verbal protestations and assertions against their binding force; or was animated by an intense and what he conceived to be an inescapable official duty to do what he did. No claim is made that the written circular of May 31, 1922, contained a stipulation that proposals in response thereto, when once made, could not be withdrawn, and we think it unnecessary to cite axiomatic authorities that until the proposal was authoritatively accepted it could be with *534 drawn. The case presents a clear case of withdrawal. This we think is confirmed by the conduct of the supply officer himself subsequent to the time of notification of withdrawal On June 26,1922, less than a week after the alleged award had been made, the supply officer seeks out this same plaintiff and engages him, by informal purchase orders, to do exactly what he thereafter claimed he was obligated to do by an existing contract, thus admitting the impossibility of performance, so far as the alleged contract of June 9, 1922, is concerned, and corroborating plaintiff’s position of advance information in this respect. In addition to this, it is extremely doubtful if the supply officer was ever authorized to deliver the award to the plaintiff. He was told not to do it if he possessed certain specific information, and beyond doubt he did possess the information which rendered the award of no effect.
A second proposal made by the plaintiff at the same time, and under exactly the same state of facts, for furnishing coal to Fort Biley, Kansas, and the Savanna Proving Grounds, Savanna, Illino,is, is relied upon by the defendant as a binding contract. We think the defendant’s contention in this respect is effectually foreclosed by the findings. This proposal was never accepted' by the defendant’s officers. No formal purchase order was ever received by the plaintiff, \and hence no contract ever came into existence.
Judgment for the plaintiff for $11,689.00. It is so ordered.
Moss, Judge; Graham, Judge; and Campbell, Chief Justice, concur.