Williams, Judge,
delivered the opinion of the court:
Plaintiff sues to recover the sum of $5,750 alleged to be due under a contract entered into between plaintiff and the defendant, represented by the Bureau of Yards and Docks,, Navy Department, for the construction of an electrical distribution system, and the erection of two substation buildings and equipment, at the Navy Yard, Pearl Harbor, Hawaii. Plaintiff completely performed the work under the contract within the time prescribed and has been paid the contract price, except the sum of $5,750, the amount of the first partial or progress payment, a voucher for the payment of which amount was duly approved by the Bureau of Yards and Docks and forwarded to the Comptroller General of the United States, who notified plaintiff of his approval of the *474 voucher with the direction that the check issue to the “Treasurer of the United States for deposit as by claimant as a set-off against its indebtedness to the United States in a like amount, bn account of default in failing to execute a contract and bond and to perform in accordance with accepted bid calling for installation upon a concrete floor to be furnished by the Government at the Navy Yard, Mare Island, Calif., of two 200-horsepower horizontal type boilers, with solid brick settings, etc., necessitating award to the next lowest bidder at an excess cost to the United States of $9,750.00.” Pursuant to this notice of settlement the amount of $5,750 due plaintiff was covered by the defendant into the United States Treasury.
Plaintiff denied that it was indebted to the United States in any amount whatever, and protested the action of the defendant in applying the first partial payment due it under the Pearl Harbor contract against the alleged indebtedness to the United States, and contends that the sum of $5,750 was illegally covered into the United States Treasury.
In December 1933 plaintiff was invited by the Bureau of Yards and Docks, Navy Department, to submit a bid for furnishing all materials and performing all work required for installing complete at the Mare Island Navy Yard two 200-H. P. horizontal water tube boilers, with brick settings, and four combination gas and oil automatic burners and accessories.
On December 30 plaintiff requested the Bay Burner Company of San Francisco, to submit quotations on the price of the four combination gas and oil automatic burners and the cost of installing them. The Bay Burner Company replied early in January, giving the requested quotations, but this letter was not received by plaintiff. On January 9 a second letter was addressed to plaintiff by the Bay Burner Company in which reference was made to the quotation of prices submitted in the previous communication, it being stated:
Since quoting on the combination gas and oil fully automatic burners to be installed under the above specification * * * We will install the four burners, complete with all the controls, * * * for a net price of $1,850.
*475 Plaintiff, without making further inquiry, assumed the $1,850 quoted to include not only the cost of installation in place but the selling price of the burners as well, and in making its calculations for the composite bid which it submitted to the Government for furnishing and installing the boilers and burners, included an estimate of $1,850 for supplying as well as installing the burners.
Upon the bids being opened on January 16 plaintiff learned that the next lowest bid (that of R. G. Meyler Corporation) was $5,750 more than its own, and in casting about to ascertain the reason for the extreme disparity between the two bids, discovered that it had misunderstood the quotations submitted to it by the Bay Burner Company, its subcontractor.
The bid submitted to the Navy Department by plaintiff contained the condition that it would not be withdrawn within sixty days, and plaintiff agreed further that if accepted within that period it would furnish the supplies, services, or work at the prices stated. The bond furnished by plaintiff at the time of submitting bid contained the obligation that plaintiff would, if the bid was accepted within sixty days, enter into a contract and furnish a performance bond,’ and on failure or refusal so to do, or if the bid be withdrawn, plaintiff obligated itself to pay the Government all excess cost incurred by it in having the work performed by others.
Before the bid was accepted, plaintiff wrote the Navy Department calling attention to its misinterpretation on misunderstanding of the price quotations of its subcontractor, and requested permission to withdraw its bid. Permission to withdraw was refused and the Navy Department] within the sixty days agreed upon, accepted plaintiff’s bid.
After acceptance plaintiff sought to reach a settlement with the Bay Burner Company concerning the price of the oil burners and the cost of installing the same, but the subcontractor refused to make any reduction in the price and cost it had quoted in its previous letters addressed to the plaintiff, the first of which had not been received.
Thereafter plaintiff refused either to enter into a contract with the Navy Department or to furnish the material and perform the work covered by the bid. The Navy Department thereupon accepted the bid of B. G. Meyler Corpora *476 tion, the next lowest bidder, at a bid price of $31,700, which was $5,750 in excess of plaintiff’s bid.
The General Accounting Office, on October 7, 1934, sent notice to plaintiff demanding that it reimburse the Government for the excess cost in the sum of $5,750. Plaintiff refused to remit said sum or any part thereof.
There can be no doubt that plaintiff’s bid on the Mare Island project was based on a mistake. The bid was based on an estimate furnished by plaintiff’s subcontractor and included $1,850 as the cost of the oil burners and their installation, when in truth and in fact the sum of $1,850 covered only the work of installation of the burners and did not .include their cost which had previously been quoted to plaintiff by the subcontractor at $5,650 in a letter which plaintiff had not received. The error of $5,650 was so large that it would be unreasonable to suppose that plaintiff would have made the bid it did had it not believed that the cost price of the burners was included in the estimate submitted by the subcontractor.
Even if the plaintiff had not expressly called the error in the bid to the defendant’s attention prior to its acceptance, the defendant should have suspected the existence of the mistake. Three bidders other than plaintiff submitted bids. These bids ranged from $25,950 submitted by plaintiff, to $31,700, $32,600, and $33,978 submitted, respectively, by the other three. When it is considered that three out of the four bids made fall within a range of $2,300 on a $32,000 job, and the fourth bid submitted is $5,750 lower than the lowest bid of the other three bids, the conclusion is obvious that the low bidder must have made an error in his computation.
Upon the facts shown we are of the opinion that plaintiff should have been permitted by the defendant to withdraw its bid without penalty, and because of such permission being refused by the defendant plaintiff was justified in its refusal to sign the contract, or to perform the work, or furnish the material contemplated in its bid. The prevailing rule is well stated in 3 McQuillan on Municipal Corporations (2nd ed.), Section 1337, as follows:
If there is an honest mistake in the bid on the part of the contractor, due to clerical errors, not intended to mislead the municipality or any other bidder, and the *477 errors were known to the municipal officers before the contract was awarded, a bidder refusing to accept the contract who is sued for the difference between the price of his bid and the sum paid by the municipality for carrying out the contract may set up the error as a defense. So if there is a mistake in the bid, and the bidder calls attention thereto promptly, he will not be bound by the bid, although the statutes provide that no bid can be withdrawn until after a contract has been let and executed for which the bid was made.
In Moffett, Hodgkins & Co. v. Rochester, 178 U. S. 373, plaintiff in submitting proposals for the performance of certain work in connection with the improvement of the waterworks system in the city of Eochester made errors whereby the compensation it would receive for the work would be greatly reduced if the proposal was accepted and the work performed. These errors were known to the city authorities before action was taken by them on the proposals. The statutes of New York provide that “neither the principal nor sureties on any bid or bond shall have the right to withdraw or cancel the same until the board shall have let the contract for which such bid is made and the same shall have been duly executed.” The city government accepted plaintiff’s bid on this particular contract and thereafter plaintiff declined to enter into the contract for the performance of the work at the price bid. The Supreme Court, in passing on the case, said:
There was no doubt of the mistake, and there was a prompt declaration of it as soon as it was discovered and before the city had done anything to alter its condition. Indeed, according to the testimony of one witness, the clerk of the board before the mistake was declared by complainant’s engineer expressed the thought that fifty cents per cubic yard for earth excavation was too low, “and there was some discussion about it at the time, but Mr. Aldridge (he was chairman of the board) said he (the clerk) might as well go on and read it, as the bid was informal.” The reading proceeded, and subsequently the board let the work on contract No. 1 to Jones & Son, and accepted complainant’s proposals containing the mistakes for the work on line “B,” contract No. 2, although complainant protested that there was a mistake in the price of earth excavation and also in tunnel excavation. *478 This was inequitable, even though it was impelled by what was supposed to be the commands of the charter. It offered or forced complainant the alternative of taking the contract at an unremunerative price, or the payment of $90,000 as liquidated damages. We do not think such course was the command of the statute or the board’s duty.
The rule between individuals is that until a proposal be accepted it may be withdrawn, and if this principle cannot be applied in the pending case, on account of the charter of the city, there is certainly nothing in the charter which forbids or excuses the existence of the necessary elements of a contract,
The charter of the city provides that “neither the principal nor sureties on any bid or bond shall have the right to withdraw or cancel the same until the board shall have let the contract for which such bid is made, and the same shall be duly executed.” A perfectly proper provision, but as was said by the learned Circuit Court:
“The complainant is not endeavoring ‘to withdraw or cancel a bid or bond.’ The bill proceeds upon the theory that the bid upon which the defendants acted was not the complainant’s bid; that the complainant was no more responsible for it than if it had been the result of agraphia or the mistake of a copyist or printer. In other words, that the proposal read at the meeting of the board was one which the complainant never intended to make, and that the minds of the parties never met upon a contract based thereon. If the defendants are correct in their contention there is absolutely no redress for a bidder for public work, no matter how aggravated or palpable his blunder. The moment his proposal is opened by the executive board he is held as in a grasp of steel. There is no remedy, no escape. If, through an error of his clerk, he has agreed to do work worth a million dollars for ten dollars, he must be held to the strict letter of his contract, while equity stands by with folded hands and sees him driven to bankruptcy. The defendant’s position admits of no compromise, no exception, no middle ground.”
These remarks are so apposite and just it is difficult to add to them. The transactions had not reached the degree of a contract — a proposal and acceptance. Nor was the bid withdrawn or cancelled against the provision of the charter. A clerical error was discovered in it and declared, and no question of the error was then made or of the good faith of complainant.
*479 The American Law Institute in Restatement of the Law of Contracts, Vol. II, Sec. 503, page 967, interprets the applicable law as follows:
1. A, in answer to an advertisement of B for bids for the construction of a building according to stated specifications, sends B a bid of $50,000. B accepts the bid. A, in the calculations that he makes prior to submitting his bid, fails to take into account an item of construction that will cost $5,000. If B knows, or because of the amount of the bid or otherwise, has reason to know that A is acting under a mistake, the contract is voidable by A; otherwise not.
The same rule is laid down in Williston on Contracts (Rev., ed., Williston and Thompson, 1937), Section 1578:
* * * Rescission has been most frequently sought where a price was bid which because of erroneous arithmetical processes or by the omission of items was based on a mistake. Relief has been allowed in several cases of this and other kinds, though denied in others. In some of them, at least, it would seem that the party not in error should have suspected the existence of a mistake, in which case clearly rescission and restitution should be allowed.
Plaintiff had the undoubted right to withdraw its bid on the Mare Island project, and having had this right it necessarily follows that plaintiff cannot be penalized because of its refusal to sign the contract, or to perform the work or furnish the material contemplated by the bid. Plaintiff therefore was not indebted to the United States in the sum of $5,750, withheld by the Comptroller General from moneys admittedly due it on the Pearl Harbor contract, and the amount was illegally withheld.
Plaintiff is entitled to recover the amount so withheld and is hereby awarded judgment in the sum of $5,750. It is so ordered.
Littleton, Judge; Geeen, Judge; and Whalet, Chief Justice, concur.
Whitakeb, Judge, took no part in the decision of this case.