**RHODE ISLAND TOOL COMPANY**
v.
**The UNITED STATES.**
No. 49913.

United States Court of Claims.
Feb. 8, 1955.

Benjamin H. Dorsey and Irving G. McCann, Washington, D. C., for plaintiff. Brookhart & Dorsey, Washington, D. C., were on the brief.

Frank J. Keating, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

Plaintiff sues for the recovery of $1,-640.60 on the ground that it made a mistake in figuring its bid for the furnishing of certain bolts. It also alleges that it withdrew its bid before it received notice of award.

On September 10, 1948, in response to an invitation to bid, plaintiff submitted a bid on a number of items contained in the invitation, the items being numbered 1 through 15. Items 1 through 12 referred to bids for a special type of bolts, "Bolts: Stud." Items 13, 14, and 15 referred to a special type of bolts, "Bolts: Machine." Items 1 to 12 were listed on the first and second pages of the invitation, while items 13 to 15 referred to machine bolts which were listed on the third page of the invitation which consisted of four legal-size pages stapled at the top. The change in the description of the type of bolts from stud to machine was on the top line of the third page.

The sales manager of the plaintiff who prepared its bid failed to notice the change in the description of the bolts from stud to machine on the third page and calculated plaintiff's bid on the basis of stud bolts. The machine bolts were a more expensive type of bolt.

The defendant divided the contract, awarding the first 12 items to another contractor, and awarding the last three items covering machine bolts to the plaintiff. Notice of award to plaintiff was mailed on October 4, 1948.

The invitation to bid contained the following provision:

"The successful bidder will *receive* Notice of Award at the earliest possible date, and such Award will *thereupon* constitute a binding contract between the bidder and the Government without further action on the part of the bidder." [Italics supplied.]

The notice of award provided:

"This contract, executed as of the above date of the acceptance of your Bid, comprises the following documents:

"(a) the Government's Invitation for Bids,

"(b) your Bid,

"(c) the Schedule,

"(d) the General Provisions, and

"(e) the Government's Award.

"No further contractual document is necessary for the consummation of this contract."

The plaintiff discovered its error late on Friday afternoon, October 1, and on the first working day thereafter, Monday, October 4, 1948, plaintiff's sales manager communicated with plaintiff's representative in Philadelphia, who immediately telephoned the Aviation Supply Office of the Navy Department in Philadelphia, notifying that office of plaintiff's error and that it desired to withdraw its bid. Later the same day the company wired the Supply Office that it was withdrawing its bid on Items 13, 14, and 15. The record does not show whether the notice of award was mailed before or after the telephone conversation in which plaintiff advised the defendant of its mistake and asked to withdraw its bid. It was received by plaintiff after the telegram of withdrawal had been sent.

On October 6, 1948, Lt.(jg.) W. H. Underwood, Jr., wrote plaintiff acknowledging its telegram and advising that the bid could not be withdrawn after the opening date, and that the award had been mailed to plaintiff on October 4, 1948.

The catalogs and lists of record show that machine bolts are a more expensive type of bolt than the stud bolts. There is no question but that a mistake was made and that plaintiff submitted its bid upon the belief that the invitation to bid was for stud bolts and overlooked the fact that the last part of the invitation was for the more expensive type of bolt.

■■ A rather well-established rule of law seems to be that after bids have been opened the bidder cannot withdraw his bid unless he can prove that the desire to withdraw is due solely to an honest mistake and that no fraud is involved. United States v. Lipman, D.C., 122 F.Supp. 284, 287; Alta Electric and Mechanical Co., Inc., v. United States, 90 Ct.Cl. 466; Leitman v. United States, 60 F.Supp. 218, 104 Ct.Cl. 324; Nason Coal Co. v. United States, 64 Ct.Cl. 526; Moffett, Hodgkins & Clarke Co. v. City of Rochester, 178 U.S. 373, 20 S.Ct. 957, 44 L.Ed. 1108. The case of Refining Associates, Inc., v. United States, 124 Ct.Cl. 115, cited by both parties and emphasized by the defendant, is inapplicable to the facts of this case. No mistake was found to exist in that case. In fact, in that case the court recognized that on many occasions it has granted relief to plaintiffs seeking to withdraw or modify a bid after the date of the opening. It cites and discusses several such cases and distinguishes them from that particular case. In the instant case the plaintiff on account of its mistake had a right to withdraw its bid, provided a binding contract had not yet been made.

The question is whether, in all the circumstances of this case, the depositing of the notice of award in the mail constitutes a binding contract from which plaintiff cannot escape, notwithstanding the mistake was brought to the attention

of the contracting officials before the notice of award was received.

■ We believe that when the record is considered as a whole in the light of modern authorities, there was no binding contract, since plaintiff withdrew its bid before the acceptance became effective.

Under the old post office regulations when a letter was deposited in the mail the sender lost all control of it. It was irrevocably on its way. After its deposit in the mail the post office became, in effect, the agent of the addressee. Naturally the authorities held that the acceptance in any contract became final when it was deposited in the post office, since the sender had lost control of the letter at that time. That was the final act in consummating the agreement.

But some years ago the United States Postal authorities completely changed the regulation. It read as follows in 1948:

"*Withdrawal by sender before dispatch.* (a) After mail matter has been deposited in a post office it shall not be withdrawn except by the sender, * * *

"*Recall of matter after dispatch.* (a) When the sender of any article of unregistered mail matter desires its return after it has been dispatched from the mailing office application shall be made to the postmaster at the office of mailing. * * *

"(b) When application has been made in due form for the recall of an article of mail matter the postmaster shall telegraph a request to the postmaster at the office of address, or to a railway postal clerk in whose custody the matter is known at the time to be, for the return of such matter to his office, carefully describing the same, so as to identify it and prevent the return of any other matter. * * *

"(c) On receipt of a request for the return of any article of mail matter the postmaster or railway postal clerk to whom such request is addressed shall return such matter in a penalty envelope, to the mailing postmaster, who shall deliver it to the sender upon payment of all expenses and the regular rate of postage on the matter returned * * *." [39 CFR 10.09, 10.10 (1939 Ed.)]

■ When this new regulation became effective, the entire picture was changed. The sender now does not lose control of the letter the moment it is deposited in the post office, but retains the right of control up to the time of delivery. The acceptance, therefore, is not final until the letter reaches destination, since the sender has the absolute right of withdrawal from the post office, and even the right to have the postmaster at the delivery point return the letter at any time before actual delivery.

We have so held. Dick v. United States, 82 F.Supp. 326, 113 Ct.Cl. 94, and authorities therein cited.

We know of no decision of any court to the contrary since the effective date of the new regulation, where the new regulation was called to the attention of the court. The English courts have construed a similar regulation to mean finality at point of destination and courts in this country have so construed the regulation. Ex Parte Cote, L.R. 9 Ch. 27; Traders' National Bank v. First National Bank, 142 Tenn. 229, 217 S.W. 977, 978, 9 A.L.R. 382; 17 C.J.S., Contracts, § 52, p. 405.

In the Bank case, supra, the Supreme Court of Tennessee, after referring to decisions which had theretofore held that the depositing of a letter in the mail was final, said:

"These cases, in so far as they deal with similar circumstances, proceed on the theory that a delivery is completed when the subject of delivery is posted in the mail.

"The test of delivery, as noted in our cases, is the power of the grantor of a deed or maker of a note to recall the same. Has he parted with dominion and control over it? If so, there has been a delivery. * * *

"Heretofore it has been assumed that when a letter was posted it was beyond the control of the sender, and became the property of the addressee as soon as put in the mail. 13 C.J. 302. We think all the cases relied on by the complainant are based on this supposition.

"If a letter, when posted, can be regarded as beyond the control of the sender, then it may well be concluded that delivery of its contents to the addressee has been perfected.

"By the United States Post Office Regulations (1913) §§ 552, 553, a change has been made as to rights of the parties. The writer or sender may now apply for a letter, which is put in the mail, and when it is properly identified, the postmaster must return it to him, or telegraph to the office of the addressee, whose postmaster must return it to the post office where mailed, if it has not been delivered. * * *"

We quote also from 17 C.J.S., Contracts, § 52, p. 405 as follows:

"*Post-office regulations as to reclaiming letter.* The rule that acceptance is final when the letter has been posted was modified by United State Post Office Regulations 1913 §§ 552, 553, that the writer or sender may apply for a letter which he has put in the mail, and when it is properly identified the postmaster must return it to him or telegraph to the office of the addressee, whose postmaster must return it to the mailing postmaster if it has not been delivered, to the effect that a letter which has been posted, but which has been returned under such regulations, does not constitute an acceptance."

Does any one believe that if the mistake had been the other way, that is, if the machine bolts had been listed first and the stud bolts as later items, and that through oversight the defendant had mailed an acceptance for too high a price and the same day had wired withdrawing and cancelling the acceptance before it left the sending post office the defendant would nevertheless have been held to an excessive price? Or again, if after mailing such an acceptance the defendant, discovering its mistake, had gone to the sending post office and withdrawn the letter, the plaintiff on hearing of it, could have enforced an excessive contract on the ground that the acceptance actually had been posted and became final and enforceable, nothwithstanding its withdrawal and nondelivery?

We cannot conceive of such an unjust enforcement. No, under the new regulation, the Post Office Department becomes, in effect, the agency of the sender until actual delivery.

We are living in a time of change. The theories of yesterday, proved by practice today, give way to the improvements of tomorrow.

To apply an outmoded formula is not only unjust, it runs counter to the whole stream of human experience. It is like insisting on an oxcart as the official means of transportation in the age of the automobile. The cart served a useful purpose in its day, but is now a museum piece.

The old rule was established before Morse invented the telegraph as a means of communication. Commerce must have a breaking point upon which it may rely for the completion of a contract. At that time no faster mode of communication was known. But in the light of the faster means of communication the Post Office Department wisely changed the rule. The reason for the old rule had disappeared. This does not change any principle, it simply changes the practice to suit the changed conditions, but leaves unchanged the principle of finality, which is just as definite as ever, though transferred to a different point by the new regulation.

This change seems to have been recognized by the Government officials who prepared the Invitation for Bids. The offer by the defendant stated that when the award was "received" by the bidder

it would "thereupon" become a binding contract. This it would seem clinches the correctness of our interpretation.

The interpretation reaches the ends of justice for all parties. It preserves the definite time at which acceptance becomes final and does so in full accord with the changed regulation.

Manifestly a mistake was made. The defendant is not injured by permitting its correction. It only forbids defendant's unjust enrichment by preventing its taking technical advantage of an evident mistake.

Plaintiff is allowed to recover its actual losses, if any, in furnishing the machine bolts, limited, however, to the difference between its bid and that of the next lowest bidder on these particular items, that amount being not a yardstick, but a ceiling on any losses it may be able to prove; or, in the alternative, the reasonable value of the items furnished, subject to the same limitation.

The case is remanded to a commissioner of this court for the purpose of hearing evidence as to such losses, if any, or as to the reasonable value of the items furnished.

It is so ordered.

LARAMORE and LITTLETON, Judges, concur.

WHITAKER, Judge (dissenting).

I think a binding contract was made in this case. I shall state my reason for this opinion very briefly. The invitation for bids asked the bidders to state the time the bid would remain in effect. The bidder stated it would remain in effect 20 days. This was a binding agreement. The bid could not be withdrawn within that time in the absence of fraud or mistake, but the mistake must have been mutual. The plaintiff admits this in its brief. A mutual mistake would invalidate plaintiff's agreement to hold his bid open for 20 days, but a unilateral mistake will not.

There were wide variations in the bids on the several items covered by the invitation. In the circumstances there was nothing to put the contracting officer on notice that the plaintiff had made a mistake.

For these reasons I dissent.

MADDEN, Judge, concurs in the foregoing dissent.