Charles R. NESBITT

v.

The UNITED STATES.

No. 321–61.

United States Court of Claims.
May 14, 1965.

Granville Tomerlin, Oklahoma City, Okl., for plaintiff. Tomerlin & High, Oklahoma City, Okl., of counsel.

John J. Cain, Dept. of Justice, Washington, D. C., with whom was Acting Asst. Atty. Gen. J. Edward Williams, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

DAVIS, Judge.

In the fall of 1956 plaintiff, a well-known Oklahoma lawyer, made two contracts with the Corps of Engineers to furnish certificates of title and title insurance on tracts in certain Oklahoma counties acquired by the Federal Government for use in two dam-and-reservoir projects. Compensation was measured, at a fixed rate, by the number of certificates completed. The agreements ran until June 30, 1961, but the defendant could end them on June 30th of any prior year by failing to give written notice of renewal. This option of renewal was exercised each year through June 30, 1960, but not for the following year.

Plaintiff does not complain about the defendant's actions under the contracts during the years which ended on June 30th of 1957, 1958, and 1959. His charge is that, during the last year (1959–1960), the Government breached the agreements —which in his view bound the defendant to order all of its certificate and insurance requirements for the specified lands from plaintiff—by obtaining some certificates and insurance from another source. He argues that, although the contracts did not expressly obligate the defendant to purchase all of its requirements from him, that was the clear aim of the detailed contractual provisions specifying what he and the Government were to do. The defendant contends, on the other hand, that from their inception the agreements were not "requirements" but pure "indefinite quantities" agreements, and that in any event plaintiff understood and impliedly agreed, as a result of discussions preceding the Government's exercise of its renewal option for the year ending June 30, 1960, that during that last period the Corps of Engineers would turn to other suppliers for some of its needs for title certificates and title insurance for the tracts involved in the two projects. This latter argument plaintiff counters by saying that the ultimate contract he was tendered and signed for 1959–1960 was, in its significant aspects, exactly the same as the agreements for

the prior years and he therefore assumed, reasonably, that the Government had withdrawn its request to be allowed to go elsewhere for part of its requirements.

We need not resolve any of these disputed questions. For the purposes of our determination we can assume, without deciding, that the contracts obligated the Government at all times, including the last year, to give all of its orders for title certificates and insurance (in the specified counties) to plaintiff. Even so, there was in each contract a standard termination clause providing that "the performance of work under this contract may be terminated by the Government in accordance with this clause *in whole, or from time to time in part,* whenever the contracting officer shall determine that such termination is in the best interests of the Government" (finding 8, emphasis added). The defendant did not invoke this clause as it could have (see footnote 3, infra), but instead acted on the assumption (which plaintiff now challenges) that the contracts were not "requirements" but "indefinite quantities" agreements, allowing the Government to order elsewhere at will.[1] In comparable circumstances we have held that the failure of the defendant to invoke the convenience-termination article makes no difference, and that that clause nevertheless sets the limit to any possible recovery. John Reiner & Co. v. United States, 325 F.2d 438, 163 Ct.Cl. 381 (1963) cert. denied, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964); Brown & Son Electric Co. v. United States, 325 F.2d 446, 163 Ct.Cl. 465 (1963). Cf. Goldwasser v. United States, 325 F.2d 722, 163 Ct.Cl. 450 (1963).

In Reiner and Brown Electric, the Government canceled the contracts, not under the termination article but because the Comptroller General had ruled them illegal. We held the contracts lawful but restricted the contractors to the amounts recoverable under the termination clause since that provision could properly have been invoked by the contracting officer. The justifications actually given for the cancellations were not valid, but "a good ground did exist" for ending the contractors' performance "in the far-reaching right to terminate under the termination article." John Reiner & Co., supra, 325 F.2d at 443, 163 Ct.Cl. at 392. That adequate cause for cancellation cured the defective reason which prompted the defendant to act. A party to a contract may "justify an asserted termination, rescission, or repudiation, of a contract by proving that there was, at the time, an adequate cause, although it did not become known to him until later." College Point Boat Corp. v. United States, 267 U.S. 12, 16, 45 S.Ct. 199, 201, 69 L.Ed. 490 (1925).[2]

The same principle applies here. Even though the two contracts be read to call upon the Government to fill all of its requirements through plaintiff's services, it cannot be denied that the Government had also reserved the right to terminate plaintiff's performance, either wholly or partially. If the contracting officer had accepted the agreements as "requirements" contracts, he could still have satisfied his desire to place some orders elsewhere by invoking the right of partial termination, "from time to time" if necessary, under the convenience-ter-

1. There is no suggestion that defendant thought that, in 1959–1960, plaintiff was in default under the contracts, or that it acted on such an assumption.

2. The court has applied a different rule where the defendant wrongly terminates the contract for the contractor's default. See Klein v. United States, 285 F.2d 778, 152 Ct.Cl. 8 (1961); Goldwasser v. Unit-

ed States, supra (in which the majority of the court thought that the contract had been so terminated); Litchfield Mfg. Corp. v. United States, Ct.Cl., 338 F.2d 94, 96, decided Oct. 16, 1964; Dale Constr. Co. v. United States, Ct.Cl., No. 134–57, decided Dec. 11, 1964, slip op., p. 26. The default rule is inapplicable here. See footnote 1, supra.

mination article.[3] It follows that, even on plaintff's view of the nature of the contracts, there was justifiable cause— the right to terminate—for what the defendant did. That justifiable cause "operate[s] to curtail the damages recoverable" to those allowable upon a termination. See College Point Boat Corp. v. United States, supra, 267 U.S. at 16, 45 S.Ct. 199.

■ On a termination, plaintiff would be entitled, in general, to the unreimbursed costs of performance, but would have no claim to anticipated but unearned profits. G. L. Christian & Associates v. United States, 312 F.2d 418, 423, 426–427, 160 Ct.Cl. 1, 11, 15–17, cert. denied, 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963); J. W. Bateson Co. v. United States, 162 Ct.Cl. 566, 568–569 (1963); Brown & Son Electric Co. v. United States, supra, 325 F.2d at 450, 163 Ct.Cl. at 472; Litchfield Mfg. Corp. v. United States, supra, 338 F.2d at 96–97, 99. The barrier plaintiff cannot hurdle is that he has not proved, or sought to prove, any such unreimbursed costs. Apparently, in performing under these contracts, he employed, from time to time, clerical assistance and lawyers who were paid hourly, per piece, or on some other similar basis so that when defendant decreased its orders to him in the latter part of the year 1959–1960 he could cut his expenses proportionately and did not continue to bear unreimbursed costs allocable to these government contracts.[4]

His sole claim is for the profit he would have made if all of the Government's orders for 1959–1960 had been routed to him. That is a type of recovery to which he would clearly not be entitled on a convenience termination and, accordingly, to which he now has no right. Since he seeks nothing else, he cannot have any judgment.

The plaintiff is not entitled to recover and his petition is dismissed.

---

3. The defendant was concerned about the backlog of its unfilled needs for title certificates and title insurance on the two projects (which was estimated to be between 30 and 40 certificates per week), and had discussed with plaintiff its demand for much greater production. Plaintiff, who did not devote full time to these contracts but had other government contracts and was also actively engaged in the private practice of law, refused to increase his minimum production as much as defendant asked, but did agree (for 1959–1960) to raise his minimum from 5 certificates a week to 10. This was still considerably less than defendant's requirements. In these circumstances, the con-

tracting officer would undoubtedly have had the power, under the termination article, to exercise the Government's right to terminate the plaintiff's full rights, in order to be free to place orders with other suppliers. John Reiner & Co., supra 325 F.2d at 442–443, 163 Ct.Cl. at 389–390.

4. If plaintiff had obligated himself by hiring personnel or incurring overhead on a longer term basis, he could recover on partial termination such of those costs as remained unrecouped—assuming, of course, that his contract was a "requirements" agreement.