**G. C. CASEBOLT CO.**

v.

**The UNITED STATES.**

**No. 331–68.**

United States Court of Claims.

Feb. 20, 1970.

Richard M. Stanislaw, Seattle, Wash., for plaintiff; Stuart G. Oles, Seattle, Wash., attorney of record. Allen, DeGarmo & Leedy, Seattle, Wash., of counsel.

Thomas W. Petersen, Washington, D. C., with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge.

The Government called for bids, in June 1968, for the installation and repair of sewers and incidental roads at Ft. Lewis in the State of Washington. Several bids were received, including one from plaintiff, an established general contractor. After the opening (late in June), the contracting officer told plaintiff orally that it would be awarded the contract. The next day defendant placed a written notice of award to plaintiff in the mail, but shortly retrieved it before delivery, and ultimately informed plaintiff that it would not have the contract. The reason for this apparent change of mind was this: Plaintiff was the second low bidder in terms of dollar amount, the lowest being Hanson Excavating Co.; determining, on the opening, that Hanson's bid was non-responsive, the contracting officer decided to reject it and to make the award to plaintiff; the oral notification and the putting of the written notice in the mails then followed; however, Hanson protested almost immediately and the written notification was taken from the post office in order to give the procuring officials time to consider this protest; after some deliberation, the Army determined that in view of the substantiality of Hanson's protest and the special circumstances (especially the imminent ending of the fiscal year on June 30th, which made it imperative to obligate the year's appropriations by that date, if at all) it would be in the Government's best interest to reject all bids at that time and to put off the possibility of contracting for this work until a succeeding fiscal year.

Insisting that it had a valid contract —either through the oral notification or the deposit of the written notice of award with the post—plaintiff demanded that it be allowed to perform and to receive a formal contract. Upon the defendant's refusal, this action was commenced, seeking the profits plaintiff says it would have made. There is no controversy over the pertinent facts and both parties have moved for summary judgment.

As in Nesbitt v. United States, 345 F.2d 583, 584–585, 170 Ct.Cl. 666, 668–669 (1965), cert. denied, 383 U.S. 926, 86 S.Ct. 931, 15 L.Ed.2d 846 (1966), we are saved from having to consider or decide most of the issues which have been proffered. We can assume with plaintiff, for the purposes of the case and without agreeing or disagreeing, that a contract was made either when the contracting officer told plaintiff on the telephone that it would be given the award or shortly thereafter when the written notice of award was dropped in the mails. We can also assume, on the same neutral basis, that an award to plaintiff would have been valid.[1] For plaintiff's situation is that, even if a valid contract were consummated, the contractor would still not be entitled, under our decisions, to the anticipatory profits now asked.

The contract the Government made, if it made one, necessarily included the standard termination-for-convenience clause. The written contract-form which would have to follow an award contained

---

1. There could be two possible illegalities in the contract: (i) if Hanson was correct in its protest, there would be the question whether the grant of the contract to plaintiff, not then the lowest responsive bidder, was lawful; and (ii) there would also be the further issue of whether the invitation for bids was so ambiguous and unspecific that no valid award could be made to anyone.

such an article, and plaintiff expressly agreed in its bid that, if it obtained the award, it would execute the required formal contract. That was an integral part of the understanding on which the bid was made.[2]

■■■ The rule we have followed is that, where the contract embodies a convenience-termination provision as this one would, a Government directive to end performance of the work will not be considered a breach but rather a convenience termination—if it could lawfully come under that clause—even though the contracting officer wrongly calls it a cancellation, mistakenly deems the contract illegal, or erroneously thinks that he can terminate the work on some other ground.[3] John Reiner & Co. v. United States, 325 F.2d 438, 163 Ct.Cl. 381 (1963), cert. denied, 377 U.S. 931, 84 S. Ct. 1332, 12 L.Ed.2d 295 (1964); Brown & Son Elec. Co. v. United States, 325 F. 2d 446, 163 Ct.Cl. 465 (1963); Nesbitt v. United States, 345 F.2d 583, 170 Ct. Cl. 666 (1965), cert. denied, 383 U.S. 926, 86 S.Ct. 931, 15 L.Ed.2d 846 (1966); Coastal Cargo Co. v. United States, 351 F.2d 1004, 173 Ct.Cl. 259 (1965); War-

ren Bros. Roads Co. v. United States, 355 F.2d 612, 173 Ct.Cl. 714 (1965); Schlesinger v. United States, 390 F.2d 702, 182 Ct.Cl. 571 (1968).[4] The principle underlying these decisions is that a party to a contract may "justify an asserted termination, rescission, or repudiation, of a contract [which turns out not to be well grounded] by proving that there was, at the time, an adequate cause, although it did not become known to him until later." College Point Boat Corp. v. United States, 267 U.S. 12, 16, 45 S.Ct. 199, 69 L.Ed. 490 (1925). In the case before us, the Government may have erred (we are assuming) in putting its refusal to let plaintiff proceed on the basis that no contract had been effected, but, if so, an adequate justification for the Government's action still existed in the termination article.

There can be no doubt that the Government, in the circumstances here, could have immediately terminated plaintiff's contract for convenience if a valid agreement had been entered into via the oral notification or the deposit of the written award-notice in the mails. The documents filed by the defendant in

---

2. The Instructions to Bidders stated: "The bidder whose bid is accepted will, within the time established in the bid, enter into a written contract with the Government and, if required, furnish performance and payment bonds on Government standard forms in the amount indicated in the invitation for bids or the specifications."

3. Perhaps it is now unnecessary to spell out three caveats to this rule: (A) We are not, of course, referring to mere temporary suspensions of work but to permanent directions to stop. (B) Under the old form contracts, the rule was different for default-terminations in those instances where there was in fact no default. See Schlesinger v. United States, 390 F.2d 702, 710, 182 Ct.Cl. 571, 584–585 (1968); J. D. Hedin Constr. Co. v. United States, 408 F.2d 424, 431–432, 187 Ct.Cl. 45, 57–59 (1969); General Builders Supply Co. v. United States, 409 F.2d 246, 251, 187 Ct.Cl. 477, 485–486 (1969); Vann et al. v. United States, 420 F.2d 968, 190 Ct.Cl. ——,

—— (Jan. 1970) (slip op. pp. 29–30). (C) The Government has in some circumstances, such as a true default or illegality of the contract, the right to terminate or cancel without any payment under the termination-convenience clause. See, e. g., Schoenbrod v. United States, 410 F.2d 400, 404, 187 Ct.Cl. 627, 635 (1969); Prestex Inc. v. United States, 320 F.2d 367, 162 Ct.Cl. 620 (1963).

4. See, also, Litchfield Mfg. Corp. v. United States, 338 F.2d 94, 96 n. 9, 167 Ct.Cl. 604, 609 n. 9 (1964); Acme Process Equip. Co. v. United States, 347 F.2d 509, 527–528, 171 Ct.Cl. 324, 355, 360 n. 29, 530 n. 29 (1965), rev'd on other grounds, 385 U.S. 138, 87 S.Ct. 350, 17 L.Ed.2d 249 (1966); Nolan Bros., Inc. v. United States, 405 F.2d 1250, 1253–1255, 186 Ct.Cl. 602, 606–610 (1969); J. D. Hedin Constr. Co. v. United States, 408 F.2d 424, 431–432, 187 Ct.Cl. 45, 57–59 (1969); General Builders Supply Co. v. United States, 409 F.2d 246, 251. 187 Ct.Cl. 477, 485–486 (1969).

support of its motion[5] show that the Hanson protest caused serious uneasiness among the Government's procurement officials; in fact, the local Army legal advisers concluded that Hanson had "a meritorious position and that he was probably right and we were wrong." In this situation, it could clearly be deemed "in the best interest of the Government" (the standard for a convenience-termination) to terminate plaintiff's contract at once, so as to deflate the existing controversy with Hanson and to avoid a possible rebuke by the General Accounting Office if Hanson took its protest there. The case is thus quite comparable to our prior rulings that it can be considered in the Government's "best interest" to use the convenience-termination clause to avoid a conflict with the Comptroller General (John Reiner & Co. v. United States, *supra*; Brown & Son Elec. Co. v. United States, *supra*; Coastal Cargo Co. v. United States, *supra*; Warren Bros. Roads Co. v. United States, *supra*), or a dispute with Congress (Schlesinger v. United States, *supra*), or in order to employ a contractor with greater facilities (Nesbitt v. United States, *supra*), or to stop work which was proving impossible or much too costly because of defective Government specifications (Nolan Bros., Inc. v. United States, *supra*).

In addition, it is quite probable that the Government would actually have used the termination clause, rather than commit a breach, if the contracting officer thought that a contract had been consummated. See John Reiner & Co. v. United States, supra, 325 F.2d at 444–445, 163 Ct.Cl. at 393–394; Nolan Bros., Inc. v. United States, supra, 405 F.2d at 1255, 186 Ct.Cl. at 609–610. We know from a contemporaneous memorandum that the local Army lawyers, believing that the deposit of the award-notice in the mails was binding, first thought "that the contract had already been le-

gally awarded and the only way to undo the erroneous award was to terminate the contract for the convenience of the Government." It was only after later discussion with a higher command that it was decided to take back the notice from the post office, on the theory that receipt by the plaintiff was necessary to complete a contract, and to reject all bids. It is highly likely that, if the earlier view that a contract had already come into existence had been accepted, the termination clause would have been invoked as originally suggested.

■ Plaintiff, which never started performance, incurred no costs of performance and therefore asks only for its anticipated (but unearned) profits. It is, of course, firmly settled that these are not allowable under a convenience-termination. See, *e. g.*, Nesbitt v. United States, supra, 345 F.2d at 586, 170 Ct.Cl. at 671; Nolan Bros., Inc. v. United States, *supra*, 405 F.2d at 1253–1254, 186 Ct.Cl. at 607–608; General Builders Supply Co. v. United States, *supra*, 409 F.2d at 251–252, 187 Ct.Cl. at 485–486. Our holding in *Nesbitt* is precisely applicable: The profit the claimant would have made under the contract, but did not in fact earn, "is a type of recovery to which he would clearly not be entitled on a convenience termination and, accordingly, to which he now has no right. Since he seeks nothing else, he cannot have any judgment." 345 F.2d at 586, 170 Ct.Cl. at 671.

The plaintiff's motion for summary judgment is therefore denied and the defendant's is granted. The petition is dismissed.

COLLINS, Judge (concurring):

I concur in both the reasoning and the result of Judge Davis' opinion. However, I feel that the court should go one step further and direct itself to the question

---

5. Plaintiff does not controvert, or attempt to contest, the facts reflected in the defendant's documents (and affidavits) which are relevant to this point and are properly to be considered under our rules.

of whether a contract actually came into existence. The holding of the majority is premised on the *assumption* that even if a contract was formed between the parties, plaintiff still would not be allowed to recover any damages because the defendant could have immediately terminated and canceled for its convenience. I feel that the court should also direct itself to the essential issue in this case of whether a contract was actually formed between Casebolt and the Government.

Without going into great detail, I would simply hold that no contract—either oral or written—ever came into existence in the present case. The fact that the written contract award notice was retrieved from the mails by defendant before receipt by plaintiff is enough to prevent the formation of a valid *written* contract. This court has consistently held that where a bid offer is accepted by the transmittal of an acceptance through the mail, a valid contract is not formed until the acceptance is received by the offeror. Pacific Alaska Contrac-

tors, Inc. v. United States, 157 F.Supp. 844, 141 Ct.Cl. 303 (1958); Rhode Island Tool Co. v. United States, 128 F. Supp. 417, 130 Ct.Cl. 698 (1955); Dick v. United States, 82 F.Supp. 326, 113 Ct.Cl. 94 (1949).

The question of whether an *oral* contract was formed should likewise be answered in the negative. Both the provisions of the contract[1] and the general statutory law[2] governing the invitation for bids require that a contract award be given by written notice.

For the reasons just stated, I feel that the petition should also have been dismissed on the grounds that no contract was ever formed, and not just on the assumption that, had a contract been in existence, it would have been terminated by the Government under the convenience-termination provision.

SKELTON, Judge, joins in the foregoing concurring opinion.

NICHOLS, Judge, concurs in both of the foregoing opinions.

---

1. Standard Form 21, which was the bid form used in this case, provides as follows:

    "The undersigned agrees that, *upon written acceptance of this bid,* mailed or otherwise furnished within ...... calendar days * * * after the date of opening of bids, he will within 10 calendar days * * * execute Standard Form 23 * * *." (Emphasis added.)

2. 10 U.S.C. § 2305(c) (1964), which deals with general military procurement, states:

    "Bids shall be opened publicly at the time and place stated in the advertisement. Awards shall be made with reasonable promptness *by giving written notice* to the responsible bidder * * *. * * *" (Emphasis added.)

    The exact same language is used in 41 U.S.C. § 253 (1964) which deals with procurement procedures for public contracts.

In addition, the Armed Services Procurement Regulations, 32 C.F.R. § 2.407-1 (1969), likewise require that any notice of award pursuant to an invitation for bids be in writing. The provision reads in part:

"* * * *Awards shall be made by mailing or otherwise furnishing to the bidder a properly executed award document* * * * *or notice of award* on such form as may be prescribed by the procuring activity. When a notice of award is issued, it shall be followed as soon as possible by the formal award. * * * All provisions of the invitation for bids * * * shall be clearly and accurately set forth * * * in the award document, *since the award is an acceptance of the bid, and the bid and the award constitute the contract.*" (Emphasis added.)