**John SOLDAU, Plaintiff–Appellant,**

v.

**ORGANON INC., a Delaware Corp., Defendant–Appellee.**

No. 87–5890.

United States Court of Appeals, Ninth Circuit.

Submitted April 5, 1988.*

Decided Nov. 2, 1988.

* The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R.

Gordon E. von Kalinowski, San Diego, Cal., for plaintiff-appellant.

J. Rod Betts, Gray, Cary, Ames & Frye, San Diego, Cal., for defendant-appellee.

Before BROWNING, Chief Judge, and NELSON and CANBY, Circuit Judges.

PER CURIAM:

John Soldau was discharged by Organon, Inc. He received a letter from Organon offering to pay him double the normal severance pay in consideration of a release by Soldau of all claims against Organon. The letter incorporated the proposed release. Soldau signed and dated the release, and deposited it in a mailbox outside a post office. On returning home he found he had received a check from Organon in the amount of the increased severance pay.

34–4 and Fed.R.App.P. 34(a).

He returned to the post office, persuaded a postal employee to open the mailbox, and retrieved the release. He cashed Organon's check. He then filed suit against Organon, alleging violation of state law and of the Age Discrimination in Employment Act (ADEA). The district court granted summary judgment for Organon, stating "the release was deemed fully communicated to Organon, and a binding contract was formed, at the time plaintiff deposited the executed release in the mailbox. The fact that plaintiff retrieved the release from the mailbox is of no consequence under California statutory and decisional law."

The district court was clearly correct under Califorina law.[1] Soldau does not argue to the contrary. Instead, he contends that the formation and validity of the release are governed by federal law, and would not have been effective unless and until it had been received by Organon. We need not decide which body of law controls. Under federal as well as California law, Soldau's acceptance was effective when it was mailed.

The so-called "mailbox" or "effective when mailed" rule was adopted and followed as federal common law by the Supreme Court prior to *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see Burton v. United States,* 202 U.S. 344, 384–86, 26 S.Ct. 688, 700–01, 50 L.Ed. 1057 (1906); *Patrick v. Bowman,* 149 U.S. 411, 424, 13 S.Ct. 811, 816, 37 L.Ed. 790 (1893); *Tayloe v. Merchants' Fire Ins. Co.,* 50 U.S. (9 How.) 390, 400, 13 L.Ed. 187 (1850).[2]

We could not change the rule, and there is no reason to believe the Supreme Court would be inclined to do so. It is almost universally accepted in the common law world.[3] It is enshrined in the Restatement (Second) of Contracts § 63(a), and endorsed by the major contract treatises.[4]

Soldau rests his case upon decisions of the Court of Claims, beginning with *Dick v. United States,* 82 F.Supp. 326, 113 Ct.Cl. 94 (1949), rejecting mailing of the acceptance as the crucial event resulting in a contract, in favor of the receipt of the acceptance by the offeror.[5] No other federal court has agreed. Commentators are also virtually unanimous in rejecting the Court of Claims' repudiation of the "effective when mailed" rule, pointing to the long history of the rule; its importance in creating certainty for contracting parties; its essential soundness, on balance, as a means of allocating the risk during the period between the making of the offer and the communication of the acceptance or rejection to the offeror; and the inadequacy of the rationale offered by the Court of Claims for the change.[6]

---

**1.** Cal.Civil Code § 1583 provides, "Consent is deemed to be fully communicated between the parties as soon as the party accepting a proposal has put his acceptance in the course of transmission to the proposer...." *See e.g., Palo Alto Town & Country Village, Inc. v. BBTC Co.,* 11 Cal.3d 494, 113 Cal.Rptr. 705, 521 P.2d 1097 (1974).

**2.** *See also Barnebey v. Barron G. Collier, Inc.,* 65 F.2d 864, 868–69 (8th Cir.1933); *Shubert Theatrical Co. v. Rath,* 271 F. 827, 834 (2d Cir.1921). The Third Circuit recently extended the rule to an analogous situation. *See In re Marin Motor Oil, Inc.,* 740 F.2d 220, 226–29 (3d Cir.1984) (a "demand" for reclamation of goods under 11 U.S.C. § 546(c) occurs on date of dispatch, not receipt).

**3.** Cases are collected in 1 Corbin, *Corbin on Contracts* § 78, at 333–34 n. 63 (2d ed. 1963).

**4.** 1 *Corbin, supra* note 3, § 78, at 333–41; 1 Williston, *A Treatise on the Law of Contracts* § 81, at 266–67 (3rd ed. 1957); *see also,* Farnsworth, *Contracts* § 3.22, at 167–69 (1982); Murray, *Murray on Contracts* § 52, at 102 (1974) ("it would seem to be more polemical than fruitful to seriously question the rule which is so universally accepted in Anglo–American law").

**5.** *Rhode Island Tool Co. v. United States,* 128 F.Supp. 417, 130 Ct.Cl. 698 (Ct.Cl.1955); *see also G.C. Casebolt Co. v. United States,* 421 F.2d 710, 714, 190 Ct.Cl. 783 (1970) (concurring opinion); *Emeco Indus., Inc. v. United States,* 485 F.2d 652, 656, 202 Ct.Cl. 1006 (Ct.Cl.1973); *Slobojan v. United States,* 136 Ct.Cl. 620, 626 (1956); *Pacific Alaska Contractors Inc. v. United States,* 157 F.Supp. 844, 846, 141 Ct.Cl. 303 (1958).

**6.** *See e.g.,* 1 Williston, *supra,* note 4, § 86, at 278 n. 20 (listing authorities criticizing *Dick* ). *Dick* reasoned that the "effective when mailed" rule rested on the premise that the offeree lost control of the acceptance when it was mailed, and that a subsequent change in postal regulations permitted the offeree to retrieve mail after it had been deposited with the post office. *Dick,*

Since Soldau's contractual obligation to release Organon in return for Organon's obligation to make the enhanced severance payment arose when Soldau deposited his acceptance in the post office mailbox, his subsequent withdrawal of the acceptance was ineffectual.[7]

AFFIRMED.

82 F.Supp. at 329–30. The regulatory change was a gradual one that began many years earlier, possibly as early as 1873, *see* MacNeil, *Time of Acceptance: Too Many Problems for a Single Rule,* 112 U.Pa.L.Rev. 947, 957 n. 28 (1964)— long before the Supreme Court adopted the "effective when mailed" rule. More important, the rule did not rest upon the theory that mailing represented a loss of control, but rather that it manifested assent to the offer.

7. *See, e.g., Mansfield v. Smith,* 88 Wis.2d 575, 277 N.W.2d 740, 746 (1979); *Morrison v.*

*Thoelke,* 155 So.2d 889, 905 (Fla.App.1963); *Farmers' Guar. State Bank v. Burrus Mill & Elevator Co.,* 207 S.W. 400, 404 (Tex.Civ.App. 1918); *Canterbury v. Bank of Sparta,* 91 Wis. 53, 64 N.W. 311, 312 (1895); 1 Corbin, *supra,* note 3 § 80, at 342–43; 1 Williston, *supra,* note 4, § 86, at 78; Restatement (Second) of Contracts § 63, comment c. *But cf. Guardian Nat'l Bank v. Huntington County State Bank,* 187 N.E. 388, 391 (Ind.1933); *Traders Nat'l Bank v. First Nat'l Bank,* 142 Tenn. 229, 217 S.W. 977, 979 (1920).