**LEITMAN v. UNITED STATES.**

No. 45498.

Court of Claims.

May 7, 1945.

William M. Aiken, of Washington, D. C. (Charles A. Horsky, of Washington, D. C., Joshua Sprayregen, of New York City, and Covington, Burling, Rublee, Acheson & Shorb, of Washington, D. C., on the brief), for plaintiff.

John B. Miller, of Washington, D. C., and Francis M. Shea, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHITAKER, Judge.

This is a suit for the recovery of the difference in the price at which plaintiff offered in writing to furnish an amount of helmet linings and the price at which he agreed to furnish them in subsequent telegrams, sent before the time for opening the bids, but received thereafter.

The defendant, through the Commanding Officer, Rock Island Arsenal, Illinois, invited bids for helmet linings in blocks of 50,000 up to 400,000 and an additional block of 100,000 for any amount that might be ordered between 400,000 and 500,000. Bids were to be opened at 9:00 a. m. on July 25, 1940.

On July 23, 1940, plaintiff submitted a bid of $1,690 per thousand for linings on quantities up to 50,000, the price being progressively lowered for blocks of 50,000 down to $1,440 per thousand for quantities amounting to between 400,000 and 500,000. In making this bid plaintiff had figured that it would require 2⅓ feet of leather for each helmet lining. But early in the morning of the day the bids were to be opened plaintiff's representative made further calculations of the amount of leather necessary to be used, and having concluded that less than 2⅓ feet per helmet would be required, he sent the Commanding Officer of the Rock Island Arsenal a telegram reducing all prices by $70.00 per thousand, and still later he sent another telegram reducing the prices by $100.00 per thousand.

The first telegram was sent at 9:19 a. m. Eastern Standard Time (8:19 a. m. Central Standard Time—Rock Island is on Central Time). The second telegram was sent at 9:31 a. m. Eastern Standard Time (8:31 a. m. Central. Standard Time).

The first one was received in the office of the Postal Telegraph Company at Rock Island, Illinois at 8:35 a. m. Central Standard Time, and the second one was received at its office at 8:55 a. m. Central Standard Time. However, they were not received at the Rock Island Arsenal until 10:40 a. m. Central Standard Time, an hour and forty minutes after the time set for the opening of the bids.

Plaintiff arrived at his office at about 12:00 o'clock on the morning of July 25,

1940, when he learned of the sending of the telegrams. Two or three hours later he inquired at the Postal Telegraph office as to the time the telegrams had been delivered. The following day the telegraph company informed him that they had been delivered at 10:40 a. m. on July 25. On that day or the following day Leitman called the Rock Island Arsenal by long distance telephone and stated to Joseph Curley, the Chief of Procurement at the Arsenal, that he thought the telegrams had been sent in error, but that he assumed they would not be considered since they had arrived after the time for the opening of the bids. Curley told him that they probably would be considered since it appeared on the face of the bids that plaintiff was the low bidder, but that all papers had been sent to Washington for final determination of the low bidder and the question of whether or not the telegrams would be considered.

Plaintiff did not withdraw his telegraphic offer nor demand that they not be considered. However, he did send to Washington Arthur A. Gardner, his contact man with Government agencies. Gardner conferred with General Drewry and Frank J. Jervey, head Ordnance Engineer, and together they made computations to determine the low bidder. At this time Gardner made no demand that the telegrams be disregarded but after he had been advised that plaintiff's written bid was the lowest, he then said that the telegrams were based upon an erroneous calculation and that they had arrived after the time for the opening of the bids. He did not, however, even at this time, demand that they be disregarded. Instead, upon being advised by defendant's representatives that the two-day limit for acceptance of plaintiff's bid had expired and that, therefore, it was possible to reject all bids and readvertise, Gardner stated that plaintiff would prefer to run the risk of loss rather than to have a readvertisement. Gardner thereupon handed defendant's representative a letter signed by plaintiff, dated July 29, 1940, extending the period for acceptance until August 5, 1940.

Plaintiff's bid was accepted by telegram on July 31, 1940, and 428,045 helmet linings were ordered. The price to be paid was not stated in defendant's telegram because the Department in Washington had under consideration the question of whether or not plaintiff's telegrams should be considered.

On August 10, 1940, plaintiff received a formal written contract for 428,045 helmet linings at the price of $1,340.00 per thousand, which was the price stated in the last telegram. At no time prior thereto had plaintiff ever demanded that the telegrams be disregarded, although he had had several conferences with Curley, the Chief of Procurement at Rock Island, and, through his representative, with the Department in Washington. However, upon receipt of this contract plaintiff protested that his telegrams were based upon an error, that they had been received too late, and that the contract should be based upon the original bid. He stated, however, that he had placed his orders for materials and was proceeding to carry out the contract, but requested that a new contract based upon the prices stated in the original bid be sent to him for signature.

Defendant refused to modify the price and refused to pay plaintiff for deliveries until the original draft of the contract had been signed and vouchers based upon the prices stated therein should be submitted. Since plaintiff was unable to borrow the money to finance the carrying out of the contract, and in order to secure payment from the defendant for deliveries made, plaintiff on January 20, 1941, executed the contract upon the basis of the prices stated in the last telegram. He did this, however, under protest, claiming that he was entitled to a contract upon the basis of the prices stated in his original bid. Subsequent to the execution of the contract plaintiff submitted vouchers upon the basis of the prices stated therein, but all of these were submitted under protest.

Had there been no advertisement for bids in this case, but had the defendant asked only the plaintiff to submit an offer to furnish it with these helmet linings, and had plaintiff first submitted an offer in writing and then modified it by the two telegrams which he sent, there would be no doubt that plaintiff would have been obligated to furnish the linings at the price stated in the last telegram.

Plaintiff never withdrew the telegraphic modification of his bid. He allowed the offer to stand, without protest, until it had been determined that he was the low bidder anyway. Then, and only then, did his representative, whom he had sent to Wash-

ington, state that the offer made in the telegrams had been based upon a miscalculation. We have no doubt that plaintiff wanted the telegrams to be considered if this was necessary in order to make him the low bidder. Only when he learned that he was the low bidder did he intimate that he would like to have the telegrams disregarded, and, even then, when the suggestion was made that there might be a re-advertisement, he did not demand that the telegrams be disregarded, but said he would' prefer to run the risk of loss. His offer to furnish the helmet linings at the prices stated in the telegrams remained in effect up until the time that he was notified that he was the successful bidder and that the contract would be awarded to him. When he received this notification he still did not demand that the telegrams be disregarded, although he had been notified that they might be taken into consideration in determining the price to be paid. The offer remained in effect until accepted.

If plaintiff is to be relieved from the offer made in the telegrams, it is only because of the provision of a War Department regulation, which was included in the instructions to bidders. This reads as follows:

"Unless specifically authorized, telegraphic bids will not be considered, but modifications by telegraph of bids already submitted will be considered if received prior to the hour set for opening."

 Manifestly, the reason for the condition placed upon the consideration of a telegraphic modification was to put all bidders on an equal basis and to prevent any bidder from obtaining an advantage over others by permitting him to modify his bid after securing information as to other bids submitted. United States v. Brookridge Farm, 10 Cir., 111 F.2d 461, 463; 21 Op. A.G. 547–548. Therefore, where the bid submitted in time is the low bid, the reason for the rule against considering telegraphic modifications of it after the time for the opening of the bids does not exist, and in such case the rule should not be applied.

The limitation on the consideration of telegraphic modifications was not for plaintiff's benefit but to prevent plaintiff from obtaining an unfair advantage. If defendant, therefore, elects to consider a telegraphic modification received after the time for the opening of the bids, plaintiff cannot complain, nor can the other bidders, because plaintiff was already the low bidder.

There can be no possible reason why a low bidder cannot voluntarily decrease the amount of his bid. Plaintiff did decrease the amount of his bid before he had any information as to other bids submitted, and even after he learned that he was the low bidder he did not withdraw his offer. Even when he was advised that the time for acceptance of his offer had expired, and, when, therefore, he could have withdrawn his bid with impunity, he did not do so, but extended the time for acceptance so as to make it a binding offer.

Plaintiff's defense that there was a mistake in his calculations, upon the basis of which the telegrams were sent, cannot be sustained. No showing whatsoever was made to support his statement that there had been a miscalculation.

 Plaintiff's offer to furnish the linings at the prices stated in his last telegram remained in full force and effect until accepted by the defendant; plaintiff, therefore, was bound to furnish the linings at the price stated therein. He has been paid this price and, therefore, is not entitled to recover. His petition will be dismissed. It is so ordered.

WHALEY, Chief Justice, and MADDEN and LITTLETON, Judges, concur.

JONES, Judge, took no part in the decision of this case.