**SOUTHERN, WALDRIP AND HARVICK COMPANY**

v.

**The UNITED STATES.**

No. 25–62.

United States Court of Claims.
July 17, 1964.

W. E. Fitzpatrick, Los Angeles, Cal., for plaintiff.

William L. Davis, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before JONES, Senior Judge, WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

PER CURIAM.

This case was referred pursuant to Rule 45(a) (since April 1, 1964, Rule 57 (a)), to Trial Commissioner Franklin M. Stone to make findings of fact and recommendation for conclusion of law. The commissioner has done so in a report filed February 14, 1964, wherein he recommends that judgment be entered for plaintiff in the sum of $28,500. On June 1, 1964, defendant filed its consent to the entry of judgment and on June 12, 1964, plaintiff filed a motion for adoption of the commissioner's report as the judgment of the court. Since the court agrees with the findings of fact and recommendation for conclusion of law as filed by the commissioner, and as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Judgment is therefore entered for plaintiff in the sum of $28,500.

This is an action to recover the difference in amount between the price set

forth in a Government construction contract awarded plaintiff, and an increased price resulting from an additive amount contained in a telegraphic bid modification message which the defendant determined was dispatched by plaintiff too late to be considered.

On June 2, 1960, plaintiff, Southern, Waldrip and Harvick Company, a Nevada Corporation, with offices located in Long Beach, California, in response to an invitation for bids for construction of SAC Missile Facilities at Beale Air Force Base, California, submitted a written bid in the amount of $700,000 to defendant, acting through the District Engineer, United States Army Engineer District, Sacramento, California. The invitation for bids stated that sealed bids for furnishing all labor, equipment, and materials and performing all work for the project described therein would be received "until 2:00 P.M., DST, 2 June 1960, in Room 305, Wright Building, 1209 Eighth Street, Sacramento, California, and then *publicly* opened." Attached to the invitation was a document entitled "Instructions to Bidders," paragraph 7 (b) of which, in relevant part, reads:

" * * * bids or bid modifications which were deposited for transmission by telegraph in time for receipt, by normal transmission procedure, prior to the time fixed in the Invitation for Bids and subsequently delayed by the telegraph company through no fault or neglect on the part of the bidder, will be considered if received prior to the award of the contract. The burden of proof of such abnormal delay will be upon the bidder and the decision as to whether or not the delay was so caused will rest with the officer awarding the contract."

Sometime during the morning of June 2, 1960, an officer of plaintiff, in response to an inquiry made of the Long Beach, California, branch office of the Western Union Telegraph Company (hereinafter referred to as "Western Union"), as to the time that would be required for the handling of a telegram between Long Beach and Sacramento, California, was advised that a telegram designated "xv RAPID" would have priority over other straight wires and that an allowance of thirty minutes would be ample time. Relying upon this information, plaintiff accepted subcontractor bids and material prices up until 1:20 P.M. on that day with the intention of adjusting its $700,-000 bid by an additive or deductive amount, depending on the final bids and prices it received from subcontractors. Thereafter, at 1:25 P.M., on the same day, plaintiff placed on a Deskfax machine located in its office the following telegraphic message:

"FAX XV RAPID SOUTHERN 6-2-60 1:25 PM TIME STAMP REQUIRED DISTRICT ENGINEER, U. S. ARMY ENGINEER DISTRICT, WRIGHT BUILDING, 1209 EIGHTH STREET, SACRAMENTO 14, CALIFORNIA.

REFERENCE: BID FOR ENG-04-167-60-38 SAC MISSILE FACILITIES, BEALE AIR FORCE BASE, PLEASE ADD $55,-555.00 TO ITEM 3 AND TO TOTAL BID. (MUST BE DELIVERED PRIOR TO 2 PM)·

FRED G. KOENEKE
VICE PRESIDENT
SOUTHERN, WALDRIP AND HARVICK CO.

2650 CHERRY AVENUE
LONG BEACH, CALIFORNIA"

This message was received in the Western Union office in Long Beach and, thereafter, at 1:31 P.M. on June 2, 1960, it was time-stamped and transmitted to Sacramento. The telegram was not released for delivery by messenger by the Western Union office in Sacramento, until 2:03 P.M. on June 2, 1960. It arrived in the offices of the District Engineer in Sacramento, where the bids were opened, at 2:10 P.M. In the form delivered, the message did not bear the notation, "must be delivered prior to 2:00 P.M.," that appeared on the message when it was transmitted by plaintiff to Western Union.

On or about June 3, 1960, the District Engineer at Sacramento, California, who was the contracting officer, issued an abstract of bids showing plaintiff as the

low bidder with a bid of $755,555. The use of this figure indicated that plaintiff's telegraphic bid modification had been accepted.

Even with the $55,555 increase, plaintiff's total bid was $6,000 lower than the Government's "reasonable contract estimate" and $67,000 lower than the bid submitted by the second lowest bidder.

By letter dated June 3, 1960, the second lowest bidder lodged a protest with the contracting officer, alleging that plaintiff's bid was not responsive in that it did not contain a unit price for bid item number 11 of the bid schedule and that the telegram modifying the bid was "not timely received nor timely posted." The District Engineer advised plaintiff of the protest and made inquiries to determine the timeliness of the bid modification.

In letters submitted to the District Engineer, plaintiff explained that the reason for the $55,555 upward revision of its bid was the discovery by it of a mistake in the amount it had bid on item 3 which was bid at $34,000 but should have been bid at $89,555.

On June 16, 1960, plaintiff sent a telegram to the District Engineer, quoting a telegram it had received from R. R. Ferlan, manager of Western Union's branch office at Long Beach, California, the text of Mr. Ferlan's telegram reading as follows:

"WHILE THE TELEGRAPH COMPANY DOES NOT UNDERTAKE TO GUARANTEE DELIVERY OF ANY MESSAGE WITHIN A SPECIFIED TIME LIMIT, A STUDY OF OUR RECORDS FOR THE PERIOD JUNE ONE THRU JUNE TEN DISCLOSES THAT THE AVERAGE OVERALL HANDLING TIME FOR A MESSAGE FROM LONG BEACH TO SACRAMENTO DURING THE HOURS NINE A.M. TO SIX P.M. WEEKDAYS WAS LESS THAN 29 MINUTES.

"BASED UPON THIS STUDY THE MESSAGE INVOLVED HERE WHICH WAS FILED AT 1:31 P.M. JUNE 2, COULD HAVE BEEN DELIVERED BEFORE THE TWO P.M. DEADLINE."

Largely on the basis of the information contained in Mr. Ferlan's telegram, the contracting officer, in a document entitled "Findings of Fact and Recommendation of Award," which was submitted to the Chief of Engineers, Department of the Army, Washington, D. C., on June 22, 1960, concluded that the plaintiff had presented " * * * clear and convincing evidence that the telegraphic modification was filed in sufficient time to have been received by 2:00 P.M. and should be accepted." The contracting officer recommended, therefore, that the protest be disallowed and the award be made to plaintiff " * * * for $755,555, the amount of their [sic] modified bid."

On August 12, 1960, however, plaintiff was advised by the contracting officer that the Chief of Engineers had determined that the bid modification message as "dispatched too late to be considered," but that on the basis of the mistake in bid, the amount of the contract would be raised from $700,000 to $726,904. The latter figure was arrived at by deducting the sum of $28,500 (the amount of mistake waived by the terms of paragraph 16, page I–4 Invitation for Bids) and $151 (for overbid on item 11) from $755,555.

After vainly protesting and urging that the contract price should be $28,500 higher, plaintiff, under threat of being placed in default, entered into a contract with the Government for $726,904. Before signing the contract, however, plaintiff inserted a provision therein reserving to itself the right to seek recovery of an additional $28,500.

On August 19, 1960, plaintiff noted an appeal to the Armed Services Board of Contract Appeals. On June 12, 1961, the Board dismissed the appeal for lack of jurisdiction, holding that this dispute was not appealable to it under the standard disputes clause because it had arisen before the contract was executed. On January 29, 1962, plaintiff filed the present suit praying judgment against the United States in the amount of $28,500.

The instructions to bidders and invitation for bids, in response to which

plaintiff submitted its bid, contained provisions dealing with mistakes in bids and separate provisions dealing with bid modifications. Under these provisions, if a bidder has erroneously understated his bid, a specified percentage of his total bid is waived. If, however, a bidder submits, for whatever reason, a telegraphic modification of his bid and such modification is timely, the total modified bid is to be considered.

In the present case, plaintiff, discovering a mistake in the amount it had bid on one item, submitted a telegraphic modification increasing its bid by $55,-555. If this modification was timely, no part of the total bid should have been treated as waived and plaintiff is entitled to succeed here.

The question of the timeliness of plaintiff's telegraphic bid modification is made difficult by the closeness of the time element here (ten minutes) and by uncertainty as to the proper criterion by which the timeliness of such a modification is to be determined. As to the latter, paragraph 7(b) of the instructions to bidders refers both to "abnormal delay" and to "normal transmission procedure" as the appropriate test. Section 2-305 of the Armed Services Procurement Regulations provides that the rules stated in Sections 2-303.3 through 2-303.5 shall govern in determining whether late bid modifications should be considered effective. Section 2-303.4 provides that a late modification should be accepted if it "* * * was filed in sufficient time to have been delivered on time by normal transmission procedure * * *". The regulations do not require the bidder to prove that the telegraph company delayed abnormally. Defendant, however, has correctly pointed to two opinions of the Comptroller General where the contractor was required to prove abnormal delay by the telegraph company. 39 Comp. Gen. 586, 40 Comp.Gen. 290. There would appear, therefore, to be conflicting rules. As will be seen below, however, the disposition of the present case does not necessitate the resolution of this conflict.

With respect to the factual question, plaintiff's telegraphic modification arrived at 2:10 P.M., ten minutes after the time fixed in the invitation for bids. There is no evidence that Western Union had encountered unusual conditions, such as line failure or equipment problems, and it would be difficult to say that there was *abnormal* delay on the part of Western Union in the handling of plaintiff's message. Nonetheless, there was delay and, on the basis of the entire record, it has been found that:

"* * * plaintiff's telegram was deposited for transmission in time for receipt, by normal transmission procedure prior to 2:00 P.M., the time fixed in the invitation for bids and was subsequently delayed by Western Union through no fault or neglect on the part of the plaintiff."

It is not believed, however, that the decision of this case should rest on a *de novo* factual determination as to the timeliness of the bid modification. This case should be decided on different and broader grounds.

The last sentence of paragraph 7(b) of the instructions to bidders provides that the determination as to the timeliness of a telegraphic bid modification "* * * will rest with the officer awarding the contract." In Mitchell Canneries, Inc. v. United States, 77 F.Supp. 498, 502, 111 Ct.Cl. 228, 247, this court reaffirmed the "established principle of law" that where a contracting officer is designated to make certain findings of fact, such findings

"* * * are binding upon both the Government and the contractor if there is no fraud, gross error or arbitrariness by the contracting officer amounting to bad faith * * * where the contracting officer acted fairly and impartially in making his findings and there is substantial evidence to support such findings, they should not be reversed."

Recently, the U. S. Supreme Court stated:

"* * * this Court long ago upheld the validity of clauses in gov-

ernment contracts delegating to a government employee the authority to make determinations of disputed questions of fact, and required such determinations to be given conclusive effect in any subsequent suit in the absence of fraud or gross mistake implying fraud or bad faith." United States v. Carlo Bianchi, Inc., 373 U.S. 709, 713, 83 S.Ct. 1409, 1412, 10 L.Ed.2d 652.

In accordance with the direction contained in paragraph 7(b) of the instructions to bidders, the contracting officer here determined that plaintiff's telegraphic modification was timely. This appears from the abstract of bids which took account of the $55,555 increase in plaintiff's bid and, even more clearly, from the document entitled "Findings of Fact and Recommendation of Award" which Lt. Colonel Joseph H. Sherrard, who was the contracting officer, submitted to the Chief of Engineers. In said document, the contracting officer stated explicitly:

"* * * it is believed that the low bidder has presented clear and convincing evidence that the telegraphic modification was filed in sufficient time to have been received by 2:00 P.M., and should be accepted."

This statement by the contracting officer would seem to be conclusive. Defendant contends, however, that the above statement was not an ultimate finding by the contracting officer, but simply a recommendation to a higher authority, the Chief of Engineers.

There is no support for defendant's position that the Chief of Engineers in Washington was supposed to decide the question of the timeliness of a local telegram and this contention does seem somewhat unreasonable. More importantly, however, defendant, in arguing as it does, is, in effect, urging that the communication to the Chief of Engineers be construed in derogation of the provisions contained in the instructions to bidders. As noted above, by paragraph 7(b) of these instructions, the contracting officer —not the Chief of Engineers—was

charged with the duty of making the determination as to the timeliness of a bid modification.

Fortunately, the interpretation advanced by the defendant is not required. In the communication to the Chief of Engineers, the contracting officer *found* that the modification was timely and *then*, on the basis of such finding, recommended that the protest be disallowed and the award be made to plaintiff in the full amount of its modified bid. This is the obvious and most reasonable construction of this communication.

The testimony of Mr. Drake, legal counsel for the Corps of Engineers, is, however, even more definitive and, on the basis of his testimony it has been found that:

"* * * had it not been for the obvious mistake in plaintiff's bid and the protest lodged by the second lowest bidder, the contracting officer would have gone ahead and awarded the contract to the plaintiff in accordance with his determination as to the timeliness of the bid modification."

It emerges, therefore, that defendant's contention with respect to the above-quoted communication to the Chief of Engineers (i. e., that it was simply a recommendation by the contracting officer to a higher authority) is not well taken. The contracting officer had the responsibility of making the determination as to the timeliness of a bid modification. He carried out that responsibility and made a determination favorable to the plaintiff. In all likelihood, but for the protest and mistake, this matter would never even have come to the attention of the Chief of Engineers.

To repeat, under the provisions of paragraph 7(b) of the instructions to bidders, the determination as to the timeliness of a telegraphic bid modification is to *rest* with the "officer awarding the contract." This provision is, in effect, an agreement between the Government and prospective contractors, and agreements such as this which designate a par-

ticular Government official to make a certain factual determination must be strictly observed. United States v. Carlo Bianchi, Inc., supra. The fact that, in the instant case, there happened to have been a protest did not change the identity of the "officer awarding the contract" and did not transfer the authority to make the determination in question to the Chief of Engineers.

When the contracting officer determined that the bid modification was timely, the principal evidence before him was the telegram of Mr. Ferlan, the manager of Western Union's branch office at Long Beach, California, supra. The fact that the study to which reference is made in said telegram was not made by Mr. Ferlan himself, and that some of the statements in said telegram were later qualified, is not important. The controlling fact is that the contracting officer had this telegram before him at the time he made his determination. He had a right to assume that the statements in the telegram were true and to reply upon them. The telegram stated that "the average overall handling time for a message from Long Beach to Sacramento * * * was less than 29 minutes" and that plaintiff's message "could have been delivered before the 2:00 P.M. deadline." In light of these statements, it cannot be said that the determination made by the contracting officer lacked the support of substantial evidence.

While another contracting officer, on the basis of the same facts, might well have determined that plaintiff's bid modification was untimely, this is a matter of judgment on a close question, and it cannot be said that the judgment of the contracting officer in this case was unsound. There was no suggestion of fraud, bad faith, or arbitrariness on the part of the contracting officer, and, considering all the evidence, his decision was not unreasonable. The evidence was certainly sufficient to preclude a subsequent determination that his decision was grossly erroneous.

In view of the foregoing, I can only conclude that the Chief of Engineers acted without authority in making an independent determination as to the timeliness of plaintiff's bid modification and in reversing the finding of the contracting officer. Plaintiff modified its bid in the prescribed manner and the appropriate officer determined that such modification was timely. In my opinion, the action of the Chief of Engineers in reversing that determination was unlawful, and plaintiff is entitled to recover. Accordingly, it is recommended that the court enter judgment for plaintiff in the amount of $28,500.