**CONDEC CORPORATION**

v.

**The UNITED STATES.**

No. 304–62.

United States Court of Claims.

Dec. 16, 1966.

I. H. Wachtel, Washington, D. C., attorney of record, for plaintiff. Daniel M. Ross and Jean J. Provost, Jr., Washington, D. C., of counsel.

Lewis H. LaRue, Washington, D. C., with whom was Acting Asst. Atty. Gen. J. William Doolittle, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

## OPINION

### PER CURIAM:

This case was referred to Trial Commissioner Herbert N. Maletz, with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on December 10, 1965. Exceptions to the commissioner's findings and recommended conclusion of law were filed by the plaintiff. The case was submitted to the court on the briefs of the parties and oral argument of counsel. Since the court agrees with the trial commissioner's findings, opinion and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is, therefore, not entitled to recover and the petition is dismissed.

### OPINION OF COMMISSIONER*

MALETZ, Commissioner:

The present suit arises this way. Plaintiff submitted a sealed bid to manufacture engine generator sets for the government at a specified price. Subsequently, a few hours before the scheduled bid opening, plaintiff addressed a telegraphic modification to the government reducing its original bid price by $132,789, which modification was not, however, received until some 30 minutes after the bid opening. At the bid opening it was disclosed that plaintiff's original bid was the low bid. The contracting officer awarded the contract to plaintiff at the reduced price set forth in its bid modification. Plaintiff performed the contract and seeks here to recover the sum of $132,789, claiming that the correct price of the contract was the one contained in its original bid.

Virtually all the facts have been stipulated and are, in summary, as follows: In April 1960, the Chicago, Illinois Procurement Office of the Army Corps of Engineers issued an invitation for bids for the manufacture and delivery of electric diesel engine generator sets and related supplies and services. In response, plaintiff, whose principal place of business was located in Stamford, Connecticut, submitted a sealed bid in the amount of $1,952,067 which was received prior to the time set for bid opening. The invitation prescribed that bids would be opened at the Army Engineers Procurement Office in Chicago at 3:00 P.M., Central Daylight Time (CDT), Friday, May 20, 1960.

On the day of the bid opening, at 12:16 P.M., Eastern Daylight Time (11:16 A.M., CDT), plaintiff filed with the Western Union Office in Stamford, Connecticut, a telegraphic day letter message decreasing its bid by $132,789 to $1,819,278, with instructions that it be delivered by 2:00 P.M., CDT, to the Chicago Procurement Office of the Corps of Engineers. In view of the 2:00 P.M. mandatory delivery time, the Western Union clerk at Stamford changed the classification of the telegraphic message from day letter to full rate.[1] The message was received in the Chicago Office of Western Union at 12:25 P.M., CDT, but due to misrouting and mutilation by Western

---

* The opinion, findings of fact and recommended conclusion of law are submitted under the order of reference and Rule 57(a).

1. Under Western Union practice, a full-rate telegram is a message accepted for immediate transmission; the minimum charge is based on 15 words and the approximate delivery time is one hour from time of filing. The day letter, by contrast, is a deferred service, accepted by Western Union for handling on a deferred basis for delivery the same business day, subject to the time the message is filed with Western Union for transmission. Thus, in transmitting day letter messages between Stamford, Connecticut, and Chicago, Illinois, Western Union assures no more than delivery of the message on the same business day.

Union, it was not received at the Engineers Procurement Office until 3:38 P.M., CDT, May 20, 1960. Meanwhile, the bids were opened at 3:00 P.M., CDT, as scheduled, and it was disclosed that plaintiff's sealed bid was the low bid.

On Monday, May 23, 1960, the next working day after May 20, 1960, and before the contracting officer had made any award, plaintiff sent a telegram to the Procurement Office in which it referred to the late delivery of its telegraphic bid modification of May 20 and stated: "If disregarded as set forth in paragraph 2.304 and 2.305 of the ASPR, the attempted modification is withdrawn and does not constitute a voluntary price reduction."[2] The contracting officer ascertained from Western Union that the telegraphic message was sent by plaintiff at 12:16 P.M., EDT, with a mandatory delivery time of 2:00 P.M., CDT, but because of a misrouting by Western Union was not available for delivery to the Procurement Office until 3:30 P.M., CDT. The contracting officer concluded that the delay in receipt of the bid modification was attributable to faulty transmission and delivery by Western Union for which the bidder was not responsible. Cf. Southern, Waldrip & Harvick Co. v. United States, 334 F.2d 245, 167 Ct.Cl. 488 (1964).

On June 1, 1960, plaintiff was awarded the contract at the price ($1,819,278) set forth in its telegraphic bid modification of May 20, 1960. On June 6, 1960, plaintiff sent a telegram to the Corps of Engineers in which it acknowledged the award and advised that it was proceeding with the contract at the amended bid price of May 20, 1960. In this telegram plaintiff also stated that the delay in receipt of the telegraphic modification was

not due solely to the delay in telegraphic transmission since it had erroneously sent the wire by day letter; that the invitation for bids allowed late modifications to be considered only where the delay was in the mails and did not permit consideration of telegraphic modifications received after bid opening; that the relief provided by section 2.305 of the ASPR could not be permitted as it would be contrary to the invitation; that in its telegram of May 23 it had withdrawn the amended bid if it was not properly to be considered in order that it not be construed as a voluntary price reduction which the government could take advantage of prior to award; that it hoped that the Corps of Engineers would reconsider the award price on the basis of the facts therein set forth; and that it was aware of the fact that there was full intention on its part to lower its price but that in fairness to itself it could not pass on a price reduction in an amended bid which could not have been considered if its original bid would not have otherwise made it the successful bidder. Plaintiff concluded by saying that it was sure the Corps of Engineers would have no objection to its presenting the question to appropriate authorities for final resolution and that meantime it would proceed diligently with the contract on the basis that the award price was the proper price. In reply the Corps of Engineers advised plaintiff that the terms of the award were in accordance with the telegraphic bid modification and that the award was considered proper under the terms of the invitation for bids and the Armed Services Procurement Regulations. Plaintiff then went ahead with performance of the contract and upon the Corps of Engineers' later re-

2. Section 2.304 of the Armed Services Procurement Regulations (32 CFR (Rev. 1954) Cum.Supp. Jan. 1, 1960, Ch. 1) provides in part that bids may be modifed by telegraphic notice received prior to the time specified for opening. Section 2.305 (a) provides that a telegraphic modification received after the time set for opening shall be considered only if received prior to award and it is deter-

mined that the lateness was due solely to delay in telegraphic transmission for which the bidder was not responsible; "*provided, however,* a modification received from an otherwise successful bidder which is favorable to the Government * * * shall be considered at any time that such modification is received." See infra.

fusal to make payment on the basis of the price set forth in its original sealed bid brought the present suit.

Relevant to the controversy are paragraphs 2, 3 and 4 of the General Terms and Conditions of the invitation for bids and paragraph 4 of the Special Terms and Conditions of the invitation which provided in part:

2. *Submission of Bids*—* * * Telegraphic bids will not be considered unless authorized by the invitation; however, bids may be modified by telegraphic notice provided such notice is received prior to the time set for the opening of the bids.

3. *Withdrawal of Bids*—Bids may be withdrawn by written or telegraphic notice (see 4 below).

4. *Late Bids*—Bids and modifications or withdrawals thereof received after the time set for opening will not be considered, unless they are received before the award is made, and it is determined by the Government that failure to arrive on time was due solely to delay in the mails for which the bidder was not responsible.

*        *        *        *        *        *

4. *Time of submission:* Bids shall be submitted in sufficient time to reach the designated office prior to the time fixed for opening. Bids received after the time fixed for opening are late bids; and the exact date and hour of mailing such bids, as shown by the cancellation stamp or by the stamp of an approved metering device, shall be recorded. Such late bids shall be considered provided they are received before the award has been made and provided the failure to arrive on time was due solely to a delay in the mails for which the bidder was not responsible; otherwise, late bids shall not be considered but shall be held unopened until the time of award and then returned to the bidder, unless other disposition is requested or agreed to by the bidder.

Also relevant to the controversy are the following sections of the Armed Services Procurement Regulations:

§ 2.201 *Preparation of forms.* The form or forms to be used in the solicitation of bids * * * should contain substantially the following information and any other information required by procedures prescribed by each respective Department.

*        *        *        *        *        *

(c) *Schedule.*

*        *        *        *        *        *

(19) Pending revision of paragraphs 3 and 4 of the Terms and Conditions of the Invitation for Bids on the back of Standard Forms 30 and 33, include the following provision:

*Late bids and withdrawals.* Bids and modifications or withdrawals thereof received in the office designated in the Invitation after the exact time specified for opening of the bids will not be considered, unless they are (i) submitted by mail or by telegram (if authorized) and received before award is made and (ii) it is determined by the Government that late receipt was due solely to either (A) delay in the mails (or by the telegraph company, if telegraphic bids are authorized) for which the bidder was not responsible or (B) mishandling by the Government after the bid, modification of [sic] withdrawal is received at the Government installation.

*        *        *        *        *        *

§ 2.301 *Method of bid submission.*

*        *        *        *        *        *

(b) Telegraphic bids shall not be considered unless permitted by the invitation for bids or its accompanying papers.

*        *        *        *        *        *

§ 2.304 *Modification or withdrawal of bids.*

Bids may be modified or withdrawn by written or telegraphic notice received prior to the exact time specified for opening. * * *

§ 2.305 *Late modifications and withdrawals.*

(a) Modifications and requests for withdrawal which are received in the office designated in the invitation for bids after the exact time specified for opening are "late modifications" and "late withdrawals," respectively. A late modification or late withdrawal shall be considered as being effective only if it is received before award; and either:

(1) It is determined that its lateness was due solely to:

(i) Delay in the mails for which the bidder was not responsible, or

(ii) Delay in telegraphic transmission for which the bidder was not responsible; * * *

&ast; &ast; &ast; &ast; &ast; &ast;

*Provided, however,* A modification received from an otherwise successful bidder which is favorable to the Government and which would not be prejudicial to other bidders shall be considered at any time that such modification is received. * * *

Against this background, plaintiff contends that the invitation for bids did not authorize consideration of late telegraphic modifications, as distinct from late mailed modificaticns; that the requirements of an invitation exculpating specified delays must be strictly construed; and that its late telegraphic modification could not be lawfully considered by the contracting officer. It further says that the provisions of the Procurement Regulations here involved cannot be read into the invitation but if they are, there would be a conflict between the provisions of the regulations and the provisions of the invitation resulting in an invitation that is ambiguous and thus construed against the drafter. Lastly, plaintiff maintains that even if the contracting officer had authority to consider a late telegraphic modification, consideration of plaintiff's telegraphic modification was nevertheless improper because its late delivery was not due solely to delay of the telegraph company. For the reasons that follow, it is concluded that these contentions cannot be accepted and that the petition must be dismissed.

■ First, there seems no doubt that in the circumstances present here the contracting officer was not only authorized but required to consider the late telegraphic modification. For one thing, section 2.305(a) of the Armed Services Procurement Regulations provided that "[a] late modification * * * shall be considered as being effective * * if it is received before award; and * * * [i]t is determined that its lateness was due * * * to * * * [d]elay in telegraphic transmission for which the bidder was not responsible. * * *" The Procurement Regulations were issued under statutory authority and had the force and effect of law and their requirements were thus controlling on the contracting officer; for the contracting officer is an agent of the government and as such may bind the United States only in accordance with the authority granted him by statute or regulation. For this reason, the requirements of the regulations (including section 2.305(a)) must be deemed applicable to the invitation, at least if the latter is to be legally valid. G. L. Christian and Associates v. United States, 312 F.2d 418, 424, 160 Ct. Cl. 1, 12 (1963), and on rehearing 160 Ct.Cl. 58, 60, 63–67, 320 F.2d 345, 347, 349–351 (1963), cert. denied 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314. Plaintiff maintains, however, that section 2.-201(c) (19) of the regulations, by reason of section 2.201 thereof, was not a mandatory clause within the meaning of *Christian*; that the contracting officer exercised his discretion by not incorporating it verbatim; and that it therefore follows that section 2.201(c) (19) was not incorporated verbatim into the invitation. Alternatively, plaintiff asserts that if section 2.201(c) (19) was a mandatory provision, it was applicable only to instances where telegraphic bids and modifications were authorized. It adds that authorization of telegraphic bids and/or modifications was a function spe-

cifically within the discretion of the contracting officer; that though the contracting officer permitted telegraphic modifications, he attached the condition that such modifications be received prior to bid opening; and that since the authorization for the use of telegraphic modifications was within the contracting officer's discretion in the first instance, it was within his authority to limit the scope and extent of use of telegraphic communications which he did by requiring in the invitation that it was necessary that a telegraphic modification be received prior to the time set for the opening of bids. These contentions, however, are premised on a misreading of the regulations. For under the regulations it is clear that while the contracting officer was given discretion as to the inclusion of a provision in the invitation authorizing telegraphic bids (see sections 2.201(c) (19) and 2.301(b)), he lacked such discretion in respect of telegraphic modifications by reason of section 2.304 of the regulations which afforded the bidder an absolute right to modify his bid by telegraphic notice; section 2.305(a), moreover, required the contracting officer to consider such modification not only if it was received prior to opening but also if it was received prior to award and it was determined that its late receipt was due to delay in telegraphic transmission for which the bidder was not responsible. Nor (as plaintiff says) is there conflict between the invitation and section 2.305 (a) with respect to late telegraphic modifications. Basic canons of construction require a reading that will uphold an instrument in its entirety and no provision should "be construed as being in conflict with another unless no other reasonable interpretation is possible." Hol-Gar Mfg. Corp. v. United States, 351 F.2d 972, 979, 169 Ct.Cl. 384, 395, (1965) and cases there cited. Applying these principles and considering the provision contained in section 2.305(a) of the regulations as applicable to the late bid clause of the invitation, it is reasonable to treat both as having equal vitality;[3] under this construction the contracting officer was required to consider a late bid modification received before award whether the delay was due to the mails or to faulty telegraphic transmission.[4]

■ Without merit is plaintiff's argument that the telegraphic modification was late because plaintiff filed it as a day letter instead of a full-rate telegram. The record is clear that plaintiff filed the message as a day letter but instructed Western Union that the message must be delivered by 2:00 P.M.—an hour before bid opening. The record is also clear that because of the mandatory delivery time of 2:00 P.M., the message was sent by Western Union as a full-rate telegram which arrived in Chicago at 12:25 P.M. But for subsequent misdelivery and mutilation by Western Union the message would have been received

3. In the event of conflict between the invitation and the regulations, it is apparent that the invitation (at least to the extent of the provision involved) would be invalid as beyond the authority of the contracting officer. What would finally happen in such a situation is a problem that need not be resolved here. Cf. e. g., Moran Brothers, Inc. v. United States, 346 F. 2d 590, 593, 171 Ct.Cl. 245, 249-250 (1965); Restatement, Agency (2d) § 164 (2).

4. In an essentially similar situation considered by the Comptroller General, the invitation specified that no late mailed bid caused by mishandling by the government at the installation could be considered for award unless it was mailed by registered or certified mail, while an ASPR provision specified that in such cases late mailed bids could be considered without regard to whether the late bid was sent by registered, certified or ordinary mail. The Comptroller General ruled that the ASPR provision was to be read into the late bid clause of the invitation or was to be applicable to the consideration of bids, and hence allowed consideration of a bid that arrived timely at a government installation by way of ordinary mail but was delivered late to the bid room due to government mishandling. 42 Comp.Gen. 508 (1963). See also 2 McBride and Wachtel Government Contracts (1965) § 10.110 [8].

prior to bid opening at 3:00 P.M. Hence, plaintiff's designation of the message as a day letter had nothing to do with its late delivery. Moreover, since receipt of the telegraphic modification was delayed by faulty telegraphic transmission for which plaintiff was not responsible, plaintiff could not withdraw the modification after bids had been opened. Refining Associates, Inc. v. United States, 109 F.Supp. 259, 124 Ct.Cl. 115 (1953). Absent mistake, if bids or modifications thereof could be withdrawn after the results of the bidding were made known "frauds innumerable could be perpetrated against the United States." Scott v. United States, 44 Ct.Cl. 524, 527 (1909). See also United States v. Lipman, 122 F. Supp. 284, 287 (E.D.Pa., 1954). Nor is the result affected by the fact that the late telegraphic modification is disadvantageous to the bidder who sent it. "Thus in the case of a legitimately delayed telegraphic amendment lowering the bid price which was already low, the bidder was bound to the lower price, 38 Comp.Gen. 674 (1959) * * *; 40 Comp.Gen. 466 (1961)." 2 McBride and Wachtel, op.cit. supra, § 10.120.

■ These considerations aside, since plaintiff was already the low bidder the contracting officer was required by the proviso in section 2.305(a) of the Procurement Regulations to consider its late telegraphic modification reducing its bid price without regard to the reason the telegram arrived late. For that proviso specified that "a modification received from an otherwise successful bidder which is favorable to the Government and which would not be prejudicial to the other bidders shall be considered at any time that such modification is received." The manifest reason for this provision is that consideration of an already low bidder's late reduction of his bid price is in the financial interest of the government and does not prejudice the rights of other bidders, since the low bidder would be entitled to the award in any event. See 38 Comp.Gen. 674 (1959); 40 Comp.Gen. 466 (1961); Comp.Gen. Dec. B–154210 (July 22, 1964, p. 4). Therefore, even in the absence of the 2.305(a) proviso or a provision allowing late telegraphic bid modifications, a telegraphic modification received after opening from the low bidder reducing his bid price will be given effect. Leitman v. United States, 60 F. Supp. 218, 104 Ct.Cl. 324 (1945). In that case, plaintiff submitted a sealed bid followed by two telegraphic modifications reducing his original bid which arrived nearly two hours after the time set for the opening of bids. After plaintiff was advised that his original bid was the low bid, he said the telegrams were in error. The contract was awarded at the reduced price specified in the telegrams and plaintiff executed the contract under protest and sued here to recover the difference between the contract price and the price set forth in his original bid. The court dismissed the petition pointing out that if there had been no advertisement for bids and plaintiff had merely submitted an offer in writing modified by the two telegrams, he would have been obligated to perform for the price stated in his last telegram, i. e., the lowest price. The court noted that plaintiff never withdrew the telegraphic modification of his bid; that he allowed the offer to stand without protest until it was determined that he was the low bidder anyway; that plaintiff wanted the telegrams to be considered if this was necessary to make him the low bidder; that only when he learned that he was the low bidder did he intimate that he would like to have the telegrams disregarded but even then did not demand that they be disregarded; that the telegrams were not based upon mistake; and that in these circumstances his offer to perform at the price specified in the telegrams remained in full force and effect until it was accepted by the government. The court further held that the plaintiff was not relieved of his offer because of a regulation incorporated in the instructions to bidders that precluded consideration of telegraphic bid modifications unless they were received prior to bid opening. "The limitation on the consideration of telegraphic modifications", the court said, "was not for plain-

tiff's benefit but to prevent plaintiff from obtaining an unfair advantage. If defendant, therefore, elects to consider a telegraphic modification received after the time for the opening of the bids, plaintiff cannot complain, nor can the other bidders, because plaintiff was already the low bidder." 60 F.Supp. at 226, 104 Ct.Cl. at 341.

Similar considerations are applicable here. Neither plaintiff nor the other bidders can complain that the government accepted its reduced price since plaintiff was already the low bidder. And the necessary conclusion that the government was justified in accepting the modification is buttressed by the proviso in section 2.305(a) that a modification under these circumstances "shall be considered at any time that such modification is received." Furthermore, plaintiff here did not withdraw its telegraphic modification at any time prior to award of the contract. It is true that after the bids were opened and plaintiff's original bid was disclosed to be low, plaintiff telegraphed the Procurement Office about late delivery of its bid modification and stated that "If disregarded as set forth in paragraph 2.304 and 2.-305 of the ASPR, the attempted modification is withdrawn and does not constitute a voluntary price reduction." Whatever other meaning might be derived from this language, it is apparent that it does not express any unconditional intent on the part of the bidder to withdraw the modification. That the plaintiff had no such intent to withdraw its modification also seems apparent from its telegram of June 6, 1960, in which it, among other things, acknowledged receipt of the award and advised that it was proceeding with the contract at the price specified in the award "which reflect our amended bid prices of 20 May 1960." There would seem no doubt that here, as in *Leitman*, plaintiff wanted the telegraphic modification to be considered if this was necessary in order to make it the low bidder. Only after it learned it was the low bidder did it take a somewhat different tack,

but even then it made no unconditional demand that its modification be withdrawn. In these circumstances, the offer as contained in the telegraphic modification remained in effect until accepted by the defendant.

Plaintiff is not entitled to recover and its petition must be dismissed.