**SCHERR CONSTRUCTION CO., INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 12–84C.**

United States Claims Court.

June 5, 1984.

---

John T. Gassman, Valley City, N.D., for plaintiff.

Jane W. Vanneman, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant.

## ORDER

NETTESHEIM, Judge.

Plaintiff Scherr Construction Co., Inc. ("plaintiff"), seeks $13,120 in bid preparation costs after the Bureau of Indian Affairs (the "BIA") rejected plaintiff's

$2,070,000 bid for the construction of a day school. Defendant has moved for summary judgment over plaintiff's opposition.

## FACTS

The decisive facts, which come from the parties' affidavits, are not disputed. Plaintiff submitted its bid by mail (received on March 19, 1983), pursuant to an Invitation for Bids that called for bid opening at 10:00 a.m.[1] on March 31, 1983, in the BIA's Albuquerque, New Mexico office. It is the BIA's treatment of its subsequent telegraphic bid modification of which plaintiff now complains. In all, six bids were received by the BIA, and by the date and hour of bid opening, two bid modifications from bidders other than plaintiff had also been received, one transmitted by Western Union.

At 3:20 on March 30, 1983, the day before bid opening, plaintiff's agent Cindy Keller delivered a final modification to the Western Union receiver located in Valley City, North Dakota, the home of plaintiff's office. Ms. Keller avers that she instructed the dispatcher immediately to telephone the modification to the Chief of the BIA's Branch of Contract Services in Albuquerque, New Mexico. The message was dispatched in the presence of Ms. Keller at no later than 3:40 p.m. At 4:39 p.m., almost one hour later, the Western Union office at Moorestown, New Jersey, attempted to obtain from the BIA in Albuquerque the General Services Administration (the "GSA") Albuquerque telex number, but the BIA had closed shop at 4:30 pursuant to unpublished "flextime" procedures. Western Union again attempted unsuccessfully to reach the BIA at 5:39 p.m. on March 30. At 10:15 a.m. on March 31, 15 minutes after bid opening, the Western Union dispatcher contacted the BIA in Albuquerque and obtained the Albuquerque GSA telex number. At 12:38 p.m., the message reached Western Union's Albuquerque of-

1. All references to time of day are to Mountain States Time, or "M.S.T.," the time zone for Albuquerque, New Mexico.

fice, and Western Union delivered the bid modification to the BIA at 1:40 p.m.

After the contracting officer rejected plaintiff's claim that it was the lowest bidder because the BIA effectively had prevented receipt of the modification, plaintiff pressed its claim before the Comptroller General, *Scherr Construction Co.*, 83–2 C.P.D. ¶ 40, but relief was denied.

Plaintiff's opposition to defendant's summary judgment motion was allowed to be filed four days late by leave of the court.

## DISCUSSION

Plaintiff charges that the *sine qua non* for rejection of its bid was the BIA's failure to answer the telephone at 4:39 p.m. during normal business hours one day before bid opening. Plaintiff's expectation that the BIA would operate in a business-like fashion was consistent with the BIA's own directive dated February 18, 1977, concerning the BIA's "Unstructured Work-day Schedule," that flextime would be performed in a "Work Period" defined as "8 hours between 7:00 a.m. and 5:00 p.m." The memorandum further stated: "All personnel are required to be at their desks or duty stations during their 8-hour workday to perform their normal work assignments." Flextime in this instance degenerated to flaccid time in that the BIA certainly cannot be congratulated for operating its Albuquerque office in a business-like manner consistent with its own directive.[2]

■ Telegraphic bid modifications, when authorized, can only be considered if received before bid opening in order "to put all bidders on an equal basis and to prevent any bidder from obtaining an advantage over others by permitting him to modify his bid after securing information as to other bids submitted." *Leitman v. United*

*States*, 104 Ct.Cl. 324, 340, 60 F.Supp. 218, 226 (1945) (citation omitted); *see* 1B J. McBride & I. Wachtel, *Government Contracts* § 10.120 (1983). Accordingly, the bidding instructions stated that late receipt of any bid or modification could not be excused unless "it is determined by the Government that the late receipt was due solely to mishandling by the Government after receipt at the Government installation." Standard Form 22, ¶ 8(2). (FPR) 41 C.F.R. § 1–2.303–4 (1983), addresses telegraphic bids:

> A late telegraphic bid received before award shall not be considered for award, regardless of the cause of the late receipt, including delays caused by the telegraph company, except for delays due to mishandling on the part of the Government in its transmittal to the office designated in the invitation for bids, as provided for bids submitted by mail (see § 1–2.303–3).

Section 1–2.305 makes this provision applicable to modification of bids:

> Modifications of bids and requests for withdrawal of bids which are received in the office designated in the invitation for bids after the exact time set for opening are "late modifications" and "late withdrawals," respectively. A late modification or late withdrawal shall be subject to the rules and procedures applicable to late bids set forth in § 1–2.303....

Section 1–2.303–3, "Mailed Bids," provides: "A late bid, modification of a bid, or withdrawal of bid shall be considered only if the circumstances set forth in the provision in § 1–2.201(a)(31) are applicable." The last-cited regulation, per subsection (31)(a)(2), contains the exact language of paragraph 8(2) of Standard Form 22, quoted *supra*.

■ The issue is whether by failing to conduct business during normal business

---

2. By supplemental declaration, defendent offers that the BIA adopted a policy on February 23, 1983, whereby the office was open from 7:30 a.m. to 4:30 p.m. The "policy" change is memorialized on a plain piece of paper, dated, but without signature, titled "Hourly Work Schedule." The paper merely lists names of employ-ees, times of duty, and lunch periods. The latest time is 4:30, which gives some indication that the office will not be open after that hour. This work schedule is not credible evidence that the policy announced in the earlier directive had been changed.

252

hours or by failing to notify those with whom it dealt—specifically, the bidders on this solicitation—of its preferred hours of operation, the BIA in effect prevented delivery of the bid modification during normal business hours. *See Ferrotherm Co.,* 81–2 C.P.D. ¶ 194. In *Ferrotherm* the contractor submitted its bid on a weekend; the Comptroller General ruled, quite reasonably, that the agency's failure to provide for the·receipt of bids outside normal business hours was not unreasonable. Significant to the case at bar is the fact that the Comptroller General determined that the failure to provide for receipt of bids on weekends was not the "paramount" cause of delay, because there was no action by the Government that prevented delivery during normal business hours. Plaintiff's best case (and the only one the court could find) is *I & C Construction Co.,* 76–2 C.P.D. ¶ 139, wherein the late receipt of a bid was solely due to the fact that the designated building was locked during normal business hours when all the employees were attending a retirement luncheon.

On the basis of *Ferrotherm* and *I & C Construction Co.,* the conclusion is inescapable that the BIA was the paramount cause of nonreceipt on March 30, 1983, the day before bid opening, even though Western Union could have transmitted the bid modification before 4:30. However, the BIA did not play any role in the failure of Western Union to deliver the telegram before 10:00 a.m. on March 31. The court concludes that the cause of the delay on March 31 was wholly attributable to Western Union's unhurried attention to transmitting the message telephonically with a follow-up telegram. Certainly, as defendant points out, plaintiff could have done more to alert Western Union as to the nature of the message (a bid modification) and the deadline for its transmission (the date and time by which it must be re-

ceived). *See Condec Corp. v. United States,* 177 Ct.Cl. 958, 369 F.2d 753 (1966) (per curiam); *Southern, Waldrip & Harvick Co. v. United States,* 167 Ct.Cl. 488, 334 F.2d 245 (1964) (per curiam) However, granting plaintiff the inferences to which it is entitled in opposing summary judgment and thus discounting that plaintiff could have done more to assure the timely delivery of its bid, the fact remains that Western Union made no effort to transmit the bid modification on the morning of bid opening until 10:15 a.m. and, even then, delivered the message to the BIA at 1:40 p.m., nearly four hours after the bids were due.

Contrary to defendant's assertion, it can be assumed that had Western Union reached BIA at 4:39 p.m. on March 30, Western Union would have communicated plaintiff's bid at that time. However, Western Union had more than one opportunity to perform the task entrusted to it. At any time between 7:00 a.m. (or 9:00 a.m., if one is to assume normal business hours) and 10:00 a.m. on March 31, Western Union could have transmitted the bid, but did not do so. The paramount cause for nonreceipt of the bid was Western Union's delay in transmission.

CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is granted.[3] The Clerk of the Court will dismiss the complaint.

IT IS SO ORDERED.

No costs.

---

3. Oral argument had been scheduled by defendant. The briefs revealed that no purpose would be served by further inquiry.