ADLER CONSTRUCTION COMPANY, a
Partnership Constituted of Harold C.
Adler and Vera L. Adler, Partners

v.

The UNITED STATES.

No. Cong. 10–60.

United States Court of Claims.

April 17, 1970.

Richard W. Smith, Lincoln, Neb., attorney of record, for plaintiff. Woods, Aitken & Aitken, Lincoln, Neb., of counsel.

Ray Goddard, Washington, D. C., with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge and LARAMORE, DURFEE, DAVIS, COL-

LINS, SKELTON, and NICHOLS, Judges.

## OPINION

### PER CURIAM:

This case was referred to Trial Commissioner C. Murray Bernhardt with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a) [since September 1, 1969, Rule 134 (h)]. The commissioner has done so in an opinion and report filed on June 11, 1969. Exceptions to the commissioner's opinion, findings and recommended conclusion of law were filed by plaintiff. Defendant urged the court to adopt the commissioner's opinion as its decision in this case. The case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, plaintiff is not entitled to recover and the petition is dismissed.

## OPINION OF COMMISSIONER

### BERNHARDT, Commissioner:

The issue of dispositive stature in this unduly protracted Government contract case is the validity of a release containing express reservations executed by plaintiff contractor in November 1956 following completion in August 1956 of a dam be built for the Bureau of Reclamation. The finality of the release is so apparent as to obviate a more than cursory recital of the issue-related facts so prolixly established in the accompanying findings, and to permit the omission entirely from such findings of those facts relating to the damage issue despite the wealth of record thereon.[1]

If valid and not waived, the release extinguishes all of plaintiff's present claims sounding in changed conditions, cardinal change, misrepresentation, erroneous classification of excavated materials, and errors in bid, since none of these are preserved, specifically or inferentially, by the 13 enumerated exceptions to the release. See H.L.C. & Associates Const. Co., 376 F.2d 586, 176 Ct.Cl. 285 (1966) and cases cited therein.

After partial correction of obvious errors in plaintiff's improvidently low bid (findings 5–25), the plaintiff was given notice to proceed in November 1952, reaching substantial completion on August 15, 1956, instead of the original completion date of June 25, 1955 (finding 26), the delays being covered by time extensions (finding 64). Radically changed conditions were encountered (findings 28–38), involving not only excessive overruns of excavation and fill material at the main damsite (findings 39–41), but also extraordinarily rough foundation terrain (findings 37–38), which completely disrupted and slowed down plaintiff's planned work sequence and increased his costs commensurately (findings 50–52), as well as occasioning demands by the contracting officer for acceleration of the work (findings 53–57), including working through the markedly severe winter of 1955–56 at a loss of 45 percent efficiency [findings 58–60). The circumstances were ideal as the basis of a claim under the changed conditions clause of the contract, but such a claim was not presented in season

On July 6, 1956, the plaintiff, in consideration of the payment of $43,314.39 for certain changes, agreed in writing to withdraw all then pending claims for compensation and to make no new claims for additional compensation on the basis of anything occurring prior to that date (findings 62–64). If this were regarded as a release it could be considered as waived by subsequent conduct of the Government in the release of November

---

1. Considering the time and expense involved in this lengthy litigation, it is regrettable that the parties did not fully explore the release issue by a dispositive motion at a much earlier stage, as was suggested by the trial commissioner's letter of March 6, 1961.

20, 1956, which by permitting the noting of extensive exceptions impliedly waived the finality of the July 6 concession by plaintiff. *See* Winn-Senter Constr. Co. v. United States, 75 F.Supp. 255, 260, 110 Ct.Cl. 34, 65–66 (1948).

On November 20, 1956, the plaintiff, in consideration of the payment of $213,-562.60 ($212,319 of which represented 10 percent withholdings from progress payments through August 1954 pursuant to Article 16 of the contract), signed an official release form in which he—

> * * * remises, releases, and forever discharges the United States of and from all manner of debts, dues, sum or sums of money, accounts, claims, and demands whatsoever, in law or in equity, under or by virtue of the said contract, except contract items and quantities as listed on the reverse side hereof.

The reverse side of the release summarized 13 exceptions totaling $198,-633.20, consisting almost entirely of disagreements on specific quantities of excavation and fill identified to specific item numbers in the contract specifications.

■ It is noteworthy that none of the claims constituting the present action were excepted from the foregoing release. No matter how meritorious may be the claims not excepted by a contractor from the operation of a full, valid release under a Government contract (and we might well feel that certain of plaintiff's non-excepted claims made here were of intrinsic merit had they been kept alive), they may not be judicially entertained later unless the release be found invalid or waived by subsequent conduct of the Government, both of which grounds plaintiff advances. *See* J. G. Watts Constr. Co. v. United States, 161 Ct.Cl. 801 (1963). The claim of invalidity of the release is based on alleged economic duress, and on the further ground that since the release was signed pursuant to Article 16 of what the plaintiff considers to be a contract

void *ab initio*, the release itself is ineffectual. Neither argument convinces.

■■ Irrespective of plaintiff's dire financial predicament (findings 61 and 80), no conceivable economic coercion could invalidate a release where, as here, there is no evidence that plaintiff was restricted in the scope of his exceptions to the release. *Cf.* Harvey-Whipple, Inc. v. United States, 342 F.2d 48, 53, 169 Ct.Cl. 689, 697–699 (1965). For all the record shows the 13 exceptions listed by plaintiff in the November 20, 1956 release which he signed were of his own free choice and represented all of the claims he then considered due him from the Government, even though he may have previously announced his intention to make an extensive claim for his damages due to changed conditions and related delays (finding 61). The time to have reserved such claims was upon the execution of the release, and we cannot passively assume that their reservation in the release would have caused the Government to deny him the final payment of withheld percentages. Plaintiff's contentions now urged that he lacked sufficient information at the time of the release to frame proper exceptions to reserve his present claims, and that he obtained the necessary data only in the course of discovery proceedings in this action, do not excuse his failure to state his exceptions covering his present claims in general terms which would have sufficed the purpose of preserving his right to pursue them. *See* Ft. Sill Associates, ASBCA No. 7482, 963 BCA ¶ 3869.

Nor does it appear that any conduct of the Government subsequent to the release constituted a waiver thereof. On August 23, 1957, the Bureau of Reclamation wrote plaintiff to inquire when he would supply additional data with respect to the items excepted from the release, advising that findings of fact would be issued within 60 days on the basis of available information concerning the excepted claims unless plaintiff filed additional data in the meantime (finding 70). After the Bureau found an

additional $530.75 due plaintiff from one of his excepted items, and denied the remaining exceptions in findings issued February 7, 1958, the plaintiff appealed and for the first time on March 3, 1958, made a claim resembling changed conditions in very general terms (findings 72 and 73). Upon forwarding the appeal to the Board of Contract Appeals the Bureau wrote to plaintiff on March 20, 1958, reciting the chronology of events since the November 20, 1956 release, and the unsuccessful efforts made by the Bureau to confer with plaintiff concerning the details of plaintiff's claims, and offering to arrange a meeting to discuss any errors in calculations (finding 74). This letter plaintiff considers to constitute a waiver of the release by the contracting officer because the latter did not complain that the claim of changed conditions made by plaintiff for the first time in his appeal was improper. However, the tenor of the letter is such that it must be considered to relate only to negotiations concerning the items excepted from the release. An ensuing conference between the parties resulted in supplementary findings by the contracting officer dated November 14, 1958, which found plaintiff to be due an additional $13,558.53 relating to items which had been excepted in the release, but specifically denying plaintiff's claim for delays because of his failure to except such a claim from the operation of the release (finding 77).

By letter of January 30, 1959, the plaintiff accepted the award of the additional sums as "satisfactory settlement of all claims under the afore-mentioned contract", except as to plaintiff's claim made for the first time in his notice of appeal of March 3, 1958, which claim plaintiff reserved and expressed his intention to appeal (finding 78). Plaintiff's timely appeal on February 28, 1959 to the Interior Department Board of Contract Appeals was dismissed on the Government's motion on the ground that plaintiff's claims sounded either in misrepresentation or called for recovery of unliquidated damages, over which the Board had no jurisdiction (finding 79).

■■ This record of events discloses no waiver by the Government of its rights under the release of November 20, 1956. On the contrary, it is quite clear that following the release the Bureau of Reclamation's sole efforts were directed to negotiating a settlement of those claims which plaintiff had expressly excepted from the release and, furthermore, that the Bureau steadfastly excluded from its consideration any claims by plaintiff which exceeded those which he had reserved from the release. The unilateral action of the plaintiff in making a formal claim for non-excepted items of recovery in no way constitutes a waiver of the release by the Government unless by its conduct the Government indicates a willingness to entertain them regardless of the release.

The plaintiff also contends that the last "release" of January 30, 1959 was invalid due to economic duress, but again the facts disclose no more than that the plaintiff was in desperate financial condition and that his acceptance of an ultimate payment of $14,089.28 in settlement of claims totaling $198,633.20 reserved from the November 20, 1956 release was the product of extensive arm's length negotiations and concessions between the parties (findings 75–77). The plaintiff's letter to the Bureau of Reclamation dated January 30, 1959 (finding 78) acknowledges the outcome of the negotiations to have been a "satisfactory settlement" of all claims which had been excepted from the release of November 20, 1956, and excepted only a general claim for "additional compensation for increased costs on the items stated therein, because these additional quantities extended the performance of the contract beyond the period foreseeable at the date of its execution". Assuming that this sole exception sounded in delay-damages, there is no indication that plaintiff was prevented from incorporating further exceptions relating to claims for changed conditions, rectification of bid errors, misclassification of

excavated material, or misrepresentation, which form the broad basis of the present action, or that he was prevented from excepting those specific items of his basic list of earlier exceptions which were deleted in their entirety from the final settlement. Nor did the unilateral exception by the plaintiff in his final "release" covering a vague delay-damages claim have the effect of reviving such a claim when it was not included in the exceptions to the earlier release of November 20, 1956, and was thereby foreclosed by that release, particularly when the Bureau of Reclamation explicitly disclaimed any responsibility for claims which were not reserved in the November 20, 1956 release.

■■ The second ground relied on by plaintiff to invalidate the release of November 20, 1956 (as well as the quasi-releases of July 6, 1956 and January 30, 1959), is that any release predicated on the terms of a provision in a contract that itself is void necessarily vitiates the release, since the claims supposedly released were claims arising under and by virtue of a contract which never had legal existence. No authority is cited for this novel proposition and it is suspected that none could be, for even if the premise of a void contract were assumed to be correct no reason is apparent why that should affect the voluntary agreement of the parties to give a release of claims arising under a *quantum meruit* performance in exchange for a valid consideration in the form of payment. In point of fact, however, the premise itself is suspect, for at best the contract awarded plaintiff initially was voidable rather than void (*see* Dougherty v. United States, 102 Ct.Cl. 249, 259 (1944)), and plaintiff's proper action would have been to bring an action for rescission. *See* Alta Elec. & Mech. Co. v. United States, 90 Ct.Cl. 466, 479 (1940). By the act of performance the plaintiff lost his right to rescission (Williston on Contracts, Rev.ed., Vol. V, § 1580), as well as his right to deny existence of the contract.

One of the plaintiff's several causes of action is for $136,240 consisting of the uncorrected portion of obvious errors in plaintiff's bid. Findings 5 through 25 explore the details thoroughly and create the distinct impression that, although the release signed by plaintiff on November 20, 1956 bars all legal rights to recovery, there is nevertheless strong moral justification in a non-juridical equitable sense (as defined in Harvey-Whipple, Inc. v. United States, *supra*), for recognition and repayment of this portion of the claim to plaintiff. So clear are the plaintiff's moral rights to reimbursement that they prompted the favorable recommendation for recognition by the Under Secretary of the Interior in his letter of July 5, 1960, to the Senate Judiciary Committee (finding 25).

Were this item of claim to still be before the court as a congressional reference claim filed here pursuant to S.Res. 288, 86th Cong., as authorized by 28 U.S. C. §§ 1492 and 2509 (1958 ed.), it would merit the court's recommendation to Congress for allowance on non-juridical equitable grounds. However, the court's order of July 2, 1964, responding to defendant's motion, dimissed the congressional reference aspect of plaintiff's claim because of views expressed in the separate concurring opinion in Glidden Co. v. Zdanok, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962), leaving the claim with the court solely for the purpose of entering judgment pursuant to 28 U.S.C. § 1492 (1958 ed.), since the claim is one lying within the court's general jurisdiction. On four successive occasions the plaintiff endeavored unsuccessfully to have the court reconsider its order, but in the meantime the court had made its report to the Senate and returned the reference papers to the cognizant committee, thus terminating any province for the court at this juncture to make any favorable recommendation

for equitable treatment by the Congress.[2]

From a legal standpoint the plaintiff effectively released the Government from liability for any reimbursement claims it may have had, and the petition should be dismissed.

2. On March 29, 1968, the court entered an order denying plaintiff's motion for reconsideration of the court's order of July 2, 1964. On that date the court had entered an order dismissing that portion of plaintiff's claims which sought equitable relief pursuant to a reference from Congress under the provisions of 28 U.S.C. § 2509, prior to the amendment of that statute on October 15, 1966. The order of March 29, 1968, stated that plaintiff's motion be and the same is hereby denied, without prejudice to plaintiff's right to seek a congressional reference of its claims to the Chief Commissioner of the Court of Claims pursuant to 28 U.S.C. § 2509, as amended October 15, 1966, and if successful in obtaining such a reference to move for dismissal of this action without prejudice. [Footnote by the court.]